Robert S. TAFOYA, Plaintiff,

v.

James ADAMS and the City and County of Denver, Defendants.

Civ. A. No. 84–K–1535.

United States District Court, D. Colorado.

July 8, 1985.

Paul A. Baca, Denver, Colo., for plaintiff.

Geoffrey S. Wasson, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff is a Mexican-American citizen of the United States. In 1980, while employed by the Parks and Recreation Department of the City and County of Denver, he filed a charge of discrimination with the Equal Employment Opportunity Commission. After this claim was settled, his supervisor, James Adams, allegedly told plaintiff he was going to "get rid" of him for having filed a charge of discrimination. Plaintiff claims that Adams then engaged in a course of conduct in retaliation for plaintiff's previous charge of discrimination which led to plaintiff's termination on January 20, 1984.

After being terminated, plaintiff filed yet another charge of discrimination with the EEOC. Upon receiving a "Right to Sue" letter, he brought the present action seeking recovery pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983.

The case is before me on defendants' motion for partial summary judgment. Defendants seek a dismissal of the §§ 1981 and 1983 claims against defendant City and County of Denver and a dismissal of the § 1983 claim against defendant Adams. The first question raised by defendants' motion is one of first impression in the Tenth Circuit: whether Title VII provides the exclusive cause of action which may be pursued in federal courts to remedy alleged violations of rights set forth in Title VII, by state and local governments, thereby precluding relief under §§ 1981 and 1983.

I.

Congress enacted Title VII of the Civil Rights Act of 1964 to prohibit discriminatory employment practices on the basis of race, color, religion, sex, or national origin. Title VII provides for a detailed and explicit regulatory scheme. In an attempt to resolve disputes through voluntary compliance, Congress empowered the EEOC to investigate charges of discrimination, promote voluntary conciliation with the requirements of Title VII, and institute civil actions against private entities engaging in employment discrimination.

An aggrieved employee must first file a claim with a state or local employment commission or the EEOC. The statute precludes immediate filing of judicial proceedings in order to encourage conciliation through administrative mechanisms. The EEOC, however, possesses no direct enforcement capacity and must request federal courts to issue injunctive orders and order affirmative relief.

A Title VII suit may be filed by either the EEOC or aggrieved individuals themselves. The time limitations for administrative and judicial filings are limited to insure expedited treatment of a plaintiff's case. Once in court, Title VII provides for injunctive relief, including back pay for a two year period. General and punitive damages are not recoverable. The Act specifically provides for the prevailing party to recover attorney fees. Finally, because of the expedited nature of Title VII judicial proceedings, as well as the limitation to equitable relief, and legislative emphasis on conciliation as distinguished from litigation,

there is no right to trial by jury.[1] 42 U.S.C. § 2000e–5; *Great Am. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372–75, 99 S.Ct. 2345, 2349–2350, 60 L.Ed.2d 957 (1979); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

■ Section 1981 prohibits discrimination based upon race.[2] It provides remedies as well as substantive rights. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Section 1983, on the other hand, does not create substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 616–18, 99 S.Ct. 1905, 1915–1916, 60 L.Ed.2d 508 (1979). It provides a remedy for the violation of rights created elsewhere.[3] As the Supreme Court made clear in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), § 1983 provides a remedy for actions under color of law which contravene federally protected rights, whether those rights derive from the Constitution or from a federal statute. Thus, independent of Title VII remedies, §§ 1981 and 1983 both provide remedies for racial discrimination by state officials in violation of the Fourteenth Amendment. *See, e.g., Hazelwood School District v. United States,* 433 U.S. 299, 310 n. 15, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir.1979).

■ The procedural requirements of §§ 1981 and 1983 are quite different from those of Title VII. To assert a claim under §§ 1981 or 1983, a plaintiff need not exhaust available administrative remedies. *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In Colorado, §§ 1981 and 1983 are subject to a three year statute of limitations, rather than the Title VII requirements that claims be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred" and with a federal district court within 90 days of the issuance of the "Right to Sue" letter. 42 U.S.C. §§ 2000e–5(e) and 2000e–(5)(f)(1); *McKay v. Hammock,* 730 F.2d 1367, 1370 (10th Cir.1984); *E.E.O.C. v. Gaddis,* 733 F.2d 1373, 1377 (1984); *see also Wilson v. Garcia,* 471 U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Additionally, remedies under §§ 1981 and 1983 are more expansive than under Title VII. Under §§ 1981 and 1983, a plaintiff may obtain both equitable and legal relief, including compensatory and punitive damages. *See Johnson,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–1720, 44 L.Ed.2d 295; *Carey v. Piphus,* 435 U.S. 247, 256–57 n. 11, 98 S.Ct. 1042, 1048–1049 n. 11, 55 L.Ed.2d 252 (1978).

## II.

Discrimination in employment is actionable under the terms of §§ 1981 and 1983

---

1. In order to expedite employment discrimination claims in federal courts, 42 U.S.C. § 2000e–5(f) makes special provision for appointment of a master to hear Title VII cases. If a Title VII case is joined with a claim under §§ 1981 or 1983, which could be tried to a jury, assignment to a master is less practicable if not prohibited. *See* Fed.R.Civ.P. 53.

2. 42 U.S.C. § 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property that is enjoyed by white persons, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extraction of every kind, and to no other.

3. 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

as well as Title VII, and plaintiffs often allege violations of each based upon the same incident. The disparity in the remedies and procedural requirements between these statutes has caused considerable confusion and difficulty. Specifically, if violations of Title VII could be asserted through other, less restrictive statutes, such as §§ 1981 and 1983, the administrative process under Title VII could be completely bypassed. Also, the complainant could obtain remedies and procedural benefits not provided for by Title VII such as punitive damages and a jury trial.

In *Brown v. General Services Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the United States Supreme Court expressed this concern as follows:

> The balance, completeness, and structural integrity of § 717 [of Title VII] are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief ... Under the petitioner's theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible. The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated "by the simple expedient of putting a different label on [the] pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 36 L.Ed.2d 439, 93 S.Ct. 1827 [1836–37] (1973). It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.

*Brown*, 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–1968. The Court concluded that, in the 1972 amendment to § 717 of Title VII, which deals only with federal employees, Congress intended "to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employ-ment discrimination." 425 U.S. 820, 829. Accordingly, the court held that a federal employee claiming job discrimination may proceed only under Title VII, and may not secure additional remedies by proceeding also under § 1981. 425 U.S. 820, 835, 96 S.Ct. 1961, 1969.

Similarly, in *Novotny*, the Court held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under [42 U.S.C.] § 1985(c)." 442 U.S. 366, 378, 99 S.Ct. 2345. The Court reasoned that such a § 1985(c) action would avoid the comprehensive procedural and remedial purposes of Title VII:

> If a violation of Title VII could be asserted through § 1985(c), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(c) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays a crucial role in the scheme established by Congress in Title VII.

*Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 2350–51.

Additionally, in other contexts, the Court has held that § 1983 claims are precluded where another comprehensive statute is violated and provides a remedy. For example, in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court held that the existence of the express remedies in the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., and the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401 et seq., demonstrates that Congress intended to supplant any remedy that otherwise might be available under § 1983. 453 U.S. 1, 19–20, 101 S.Ct. 2615, 2626–2627. The Court reasoned that

[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. As Justice Stewart, who later joined the majority in *Maine v. Thiboutot,* stated in *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 673 n. 2, 60 L.Ed.2d 508, 99 S.Ct. 1905 [1909 n. 2] (1979) (dissenting opinion), when "a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983."

*Sea Clammers,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626.

Also, in *Smith v. Robinson,* —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court determined that Congress intended the Education of the Handicapped Act (EHA), 20 U.S.C. § 1400 et seq., "to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." 82 L.Ed.2d 746, 763. As in *Sea Clammers,* the Court found that

The EHA is a comprehensive scheme set up by Congress to aid the States in complying with their constitutional obligations.... Both the provisions of the statute and its legislative history indicate that Congress intended handicapped children with constitutional claims ... to pursue those claims through the carefully tailored administrative and judicial mechanism set out in the statute.

*Smith,* —— U.S. ——, ——, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746, 763.

While these decisions do not directly address the issue in the present case, their import and reasoning are clear. Title VII is a comprehensive and detailed statutory scheme which provides specific remedies for rights created therein. To allow assertion of rights created by Title VII in a claim brought under another statute would be to subvert this comprehensive statutory scheme. Certainly, Congress did not intend this result. The legislative history, however, regarding the inclusion of state and local employees within the protection of Title VII indicates that Congress did not intend to preclude them from bringing §§ 1981 and 1983 claims completely.

Federal and state employees were brought under Title VII by the Equal Employment Opportunity Act of 1972, P.L. 92–261, 86 Stat. 103. The House bill was passed in lieu of the Senate bill, so I turn to the House Committee Report for guidance as to congressional intent. I quote from the committee report at length, because the context of the committee's concern with pre-empting § 1983 is important to understanding the scope of Title VII.

While an individual has a right of action in the appropriate court if he has been discriminated against, the adequacy of protection against employment discrimination by state and local governments has been severely impeded by the failure of the Congress to provide *Federal administrative machinery* to assist the aggrieved employee.

.  .  .  .  .

[S]tate and local governments constitute the only large group of employees in the nation who are almost entirely exempt from Federal nondiscrimination protections. Although the aggrieved individual may enforce his rights directly in the Federal district courts, this remedy ... is frequently an empty promise due to the expense and time involved in pursuing a Federal court suit.

.  .  .  .  .

The Committee feels that it is an injustice to provide employees in the private sector with an *administrative forum* in which to redress their grievances while at the same time, denying similar protection to the increasing number of state and local employees. Accordingly, H.R. 1746 provides the *administrative remedies* available to employees in the private sector should also be extended to state and local employees.

In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected ... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination ... [T]he remedies available to the individual under Title VII are coextensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive. The bill, therefore, by extending jurisdiction to State and local government employees does not affect the existing rights that such individuals have already been granted by previous legislation.

H.R.Rep. No. 238, 92nd Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Ad.News 2137, 2153–54 (1972) (emphasis added). The Committee then noted that Title VII was designed as a means to remedy discrimination prohibited by the Thirteenth and Fourteenth Amendments. The Committee continued:

Legislation to implement this aspect of the Fourteenth Amendment is long overdue, and the Committee believes that an appropriate remedy has been fashioned in the bill. Inclusion of state and local employees among those enjoying the protection of Title VII provides an *alternate administrative remedy* to the existing prohibition against discrimination perpetuated "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

H.R.Rep. No. 238, 92nd Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Ad.News 2137, 2154 (1972) (emphasis added).

As indicated by the legislative history, Congress' primary concern in bringing state and local employees under Title VII was to provide these individuals with access to the federal administrative scheme designed to combat employment discrimination. Clearly, Congress intended to permit individuals to pursue concurrently administrative options under Title VII and judicial remedies under §§ 1981 and 1983.

■ The legislative history, however, does not indicate whether Congress intended to permit the concurrent assertion of Title VII claims with §§ 1981 and 1983 claims in a single judicial proceeding. As noted above, when §§ 1981 and 1983 claims are brought in the same action as the Title VII claim, asserting violations of rights created by Title VII, the limited procedures and remedies of Title VII are subverted. It is inconsistent with the general statutory scheme of Title VII to permit the consideration of Title VII claims and §§ 1981 and 1983 claims based upon Title VII in the same lawsuit in federal court.[4]

Plaintiffs, however, may assert violations of other statutes, such as §§ 1981 and 1983, along with a Title VII claim in the same judicial proceeding as long as the other claims are independent and are not based on violations of rights set forth in

---

**4.** Plaintiff argues that the language in *Johnson,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 controls and that Title VII is not the exclusive remedy. In *Johnson,* the Court stated that "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possessed and is not limited to Title VII in his search for relief." 421 U.S. 454, 459. The Court's statement does not negate the requirement that the plaintiff establish an independent basis for his additional claims.

Plaintiff also argues that my decision in *Firefighters Inc. for Racial Equality v. Bach,* 522 F.Supp. 1120 (D.Colo.1981), *rev'd,* 731 F.2d 664 (10th Cir.1984), and Judge Carrigan's opinion in *Whatley v. Skaggs Companies, Inc.,* 502 F.Supp. 370 (D.Colo.1981), *aff'd in part and remanded in part,* 707 F.2d 1129 (10th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983), provide that a state employee could pursue concurrent judicial claims for employment discrimination under Title VII and §§ 1981 and 1983. These cases are not applicable. In *Firefighters,* I did not consider the issue before me now. Similarly, in *Whatley,* Judge Carrigan dealt with a different issue.

Title VII. This critical distinction has been maintained by a majority of the courts which have addressed the question presented in this case. *See Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir.1982); *Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984); *Talley v. City of De Soto,* 37 Fair Empl. Prac.Cases 375 (N.D.Tex.1985); *Green v. Illinois Dept. of Transportation,* 609 F.Supp. 1021 (E.D.Ill.1985); *Ratliff v. City of Milwaukee,* 608 F.Supp. 1109 (E.D.Wis. 1985); *Torres v. Wisconsin Dept. of Health & Social Svcs.,* 592 F.Supp. 922 (E.D.Wisc.1984); *Zewde v. Elgin Comm. College,* 601 F.Supp. 1237 (W.D.Wisc.1982); *cf. Heubschen v. Department of Health & Social Svcs.,* 547 F.Supp. 1168 (W.D.Wisc. 1982), *rev'd on other grounds,* 716 F.2d 1167 (7th Cir.1983).

In *Day,* for example, the Sixth Circuit held that "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." 749 F.2d 1199, 1204. The court, after considering the legislative history set forth above, stated that "we do not read this language as expressing an intent that where employer conduct violates only Title VII, which created new rights and remedies for public employees, an aggrieved employee may sue under both Title VII and § 1983." *Day,* 749 F.2d 1199, 1204–1205. In other words, where an employee does not establish an independent basis and the §§ 1981 and 1983 claims are inherently bound up with the Title VII claim, Title VII constitutes the exclusive remedy. *See Torres,* 592 F.Supp. 922, 930 (plaintiff's so-called constitutional allegations are so tied up with their cause of action under Title VII as to be nearly unidentifiable as discrete claims); *see also Ratliff,* 608 F.Supp. 1109; *Green,* 609 F.Supp. 1021.

### III.

This gives rise to the second question upon the defendant's motion for partial summary judgment: whether plaintiff's claims under §§ 1981 and 1983 are premised upon his claim under Title VII.

Defendants have moved for partial summary judgment on this issue. Summary judgment is a drastic remedy. The Tenth Circuit has cautioned that any relief pursuant to Fed.R.Civ.P. 56 should be applied with care. *Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973). The burden is on the moving party to show the absence of a genuine issue of material fact. Pleadings and factual issues of material fact must be viewed in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Rea v. Wichita Mortg. Corp.,* 747 F.2d 567, 573 (10th Cir.1984). Unless the moving party can demonstrate his entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton v. Liddell,* 620 F.2d 1375, 1381 (10th Cir.1980). However, a party opposing summary judgment may not rest on allegations contained in pleadings to rebut the movant's factual proof in support of the motion for summary judgment. The party opposing the motion must respond with specific facts demonstrating genuine issues requiring resolution at trial.

Defendants contend that there is no distinction between plaintiff's Title VII claim and his claims under §§ 1981 and 1983, and therefore, the §§ 1981 and 1983 claims should be dismissed. Plaintiff fails to address this contention. Plaintiff's complaint merely alleges violations of each of these statutes. The facts set forth in the complaint, construed most favorably to the plaintiff, indicate that plaintiff may have been terminated in retaliation for filing a previous discrimination charge and there might also have been some discrimination involved with this termination. These factual allegations, if proved, would come under the specific terms of Title VII. See 42 U.S.C. § 2000e–3(a). For the reasons stated above, Title VII would therefore provide the exclusive remedy unless plaintiff alleges an independent basis for his §§ 1981 and 1983 claims. Yet, nowhere does plaintiff assert an independent basis for these

claims.[5] In fact, these claims are indistinguishable from plaintiff's Title VII claim. Accordingly, Title VII constitutes the exclusive remedy in this case. Defendants' motion for partial summary judgment, to dismiss plaintiff's §§ 1981 and 1983 claims, is granted as to defendant City and County of Denver.

### IV.

Defendants' final contention is that plaintiff's § 1983 claim against defendant John Adams, plaintiff's supervisor, should be dismissed. Defendants argue that plaintiff's § 1983 claim is based entirely upon a violation of Title VII, and that, since defendant Adams is not amenable to an action under Title VII, plaintiff cannot thereby bring a claim against him under § 1983. In support of this contention, defendants cite the Seventh Circuit's opinion in *Heubschen*, 716 F.2d 1167.

In *Heubschen*, the plaintiff brought an action against his employer and supervisor, under Title VII and § 1983, for sexual harassment. The trial court held that the plaintiff could maintain an action against his supervisor under § 1983 based upon Title VII. 547 F.Supp. 1168, 1174. The Seventh Circuit, however, reversed, stating that "a plaintiff cannot bring an action under section 1983 based upon Title VII against a person who could not be sued directly under Title VII." 716 F.2d 1167, 1170. Here, the court determined that the plaintiff could not have maintained an action against his supervisor under Title VII because she was not an "employer" within the meaning of § 703(a)(1) of Title VII. The court went on to state that

> [t]he effect of allowing a plaintiff to bring an action under section 1983 based upon Title VII against a defendant who could not be sued directly under Title VII would be to enlarge the relief available to one bringing an action for a violation of Title VII. Plaintiffs proceeding under section 1983 for violations of Title VII

would obtain a substantive enlargement of the latter if they were able to sue a class of persons immune from actions brought directly under Title VII.

*Heubschen*, 716 F.2d 1167, 1170.

In the present case, it must first be determined whether defendant Adams is immune from a Title VII action. Defendants maintain that Adams is not an "employer" and is therefore not subject to Title VII. Under Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ..., *and any agent of such a person* .... 42 U.S.C. § 2000e(b) (emphasis added). While defendant Adams is not "a person ... who has fifteen or more employees", he is admittedly an "agent of such a person." Officials and supervisors having responsibility and power to employ personnel and to control their conditions of employment have been held subject to Title VII. *See, e.g., Owens v. Rush,* 636 F.2d 283 (10th Cir.1980); *Gay v. Board of Trustees,* 608 F.2d 127 (5th Cir.1979); *Goodman v. Board of Trustees,* 511 F.Supp. 602 (N.D. Ill.1981); *Kelly v. Richland School Dist. 2,* 463 F.Supp. 216 (D.S.C.1978); *Manley v. Mobile County, Ala.,* 441 F.Supp. 1351 (S.D.Ala.1977); *Padilla v. Stringer,* 395 F.Supp. 495 (D.N.M.1974); *Byron v. University of Florida,* 403 F.Supp. 49 (N.D. Fla.1975); *Schaefer v. Tannian,* 394 F.Supp. 1128 (E.D.Mich.1974); *Compton v. Borden, Inc.,* 424 F.Supp. 157 (D.Ohio 1976); *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063 (S.D.Maine 1977); *Jeter v. Boswell,* 554 F.Supp. 946 (D.W.Va.1983).

In *Owens,* for example, the Tenth Circuit held that the "county sheriff is an agent of the [employer] county for all matters properly committed to his discretion—including the hiring and firing of employees." 636 F.2d 283, 287. Accordingly, the court found that the sheriff was subject to liability under Title VII. In *Padilla,* the district court found that the director of the Albu-

---

**5.** This situation is unlike that presented in *Owens v. Rush,* 654 F.2d 1370 (10th Cir.1981), where the plaintiff alleged violations of inde-

pendent substantive rights in addition to his Title VII claims.

querque zoo was an agent of the city within the meaning of § 2000e(b). The court stated that "an individual employee of an employer can be sued for participating in the managerial decisions that constituted alleged discriminatory conduct." 395 F.Supp. 495, 497.

In the present action, defendant Adams is a Recreation Supervisor for the Department of Parks and Recreation for the City and County of Denver. Plaintiff alleges, in his complaint, that Adams "engaged in a campaign to accomplish his termination." Plaintiff also asserts that the City and County of Denver, through its Manager of Parks and Recreation, followed Adams' recommendation that plaintiff be terminated. While Adams may not have direct power to hire and fire personnel, he participated in such managerial decisions. Adams also had control over plaintiff's employment conditions.

Given Adams' position and responsibility in the Parks and Recreation Department, he is an "agent" of the city for purposes of § 2000e(b). Accordingly, defendant Adams is an "employer" subject to the terms of Title VII.

Since Adams is subject to Title VII, plaintiff's §§ 1981 and 1983 claims against him cannot be dismissed for the reason stated in *Heubschen.* However, as with the §§ 1981 and 1983 claims against the city, the §§ 1981 and 1983 claims against Adams do not have an independent basis. Therefore, these claims must be dismissed as against defendant Adams.

IT IS THEREFORE ORDERED that:

Defendants' motion for partial summary judgment is GRANTED. Plaintiff's §§ 1981 and 1983 claims against both defendants are dismissed.