**Debra T. SAUERS, Plaintiff,**

v.

**SALT LAKE COUNTY, et al.,
Defendants.**

**Civ. No. 88–C–0595G.**

United States District Court,
D. Utah, C.D.

May 12, 1989.

Kathryn Collard, Salt Lake City, Utah, for plaintiff.

Patricia Marlowe, Salt Lake City, Utah, for defendants.

### MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on defendants Salt Lake County, Ted Cannon, Sam Dawson, David Yocom, Donald Sawaya, Michael Stewart and Bart Barker's ("defendants") motions to dismiss plaintiff Debra T. Sauers' claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. §§ 1983, 1985(3) and 1986 ("Civil Rights"), and pendent state law claims. Both parties

submitted memoranda regarding these motions and oral argument was heard on November 22, 1988. Kathryn Collard represented the plaintiff and Patricia J. Marlowe of the Salt Lake County Attorney's Office represented the defendants. During oral argument counsel for plaintiff admitted that the pendent state law claims were not yet properly before the court. The court dismissed those claims and took the remaining motions to dismiss under advisement. The court now being fully advised enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

This case arises from plaintiff Sauers' claims of sexual discrimination by the Salt Lake County Attorney's Office. Plaintiff was employed by that office from October 1983 until February 1988. During June, July, and August 1987, plaintiff Sauers attempted to resolve an employment dispute with various supervisory persons of the Salt Lake County Attorney's Office. Specifically, plaintiff's grievance concerned her suspension for two days without pay in June 1987 for insubordination allegedly resulting from plaintiff sending out subpoenas earlier than she should have (the "June 1987 grievance"). In essence, plaintiff claimed that the discipline was discriminatory and retaliatory because it arose from her complaints about the sexual misconduct of her supervisor, Ted Cannon.[1] Plaintiff Sauers could not resolve the dispute to her satisfaction and appealed to the Salt Lake County Career Service Council ("CSC"), an administrative body created by Salt Lake County pursuant to Utah Code Ann. § 17–33–4.[2] On October 21, 1987, a hearing was held before the Career Service Council and on October 30, 1987, the Council entered its Findings of Fact, Conclusions of Law and Decision, which upheld the disciplinary action taken against plaintiff. On December 24, 1987, the CSC affirmed its decision of October 30, 1987, after apparently reconsidering it at the request of plaintiff Sauers. Plaintiff did not appeal the adverse CSC decisions to the state district court.

In January 1988, plaintiff was given a Notice of Intent to Terminate letter by Deputy Salt Lake County Attorney Donald Sawaya. That letter set forth seven reasons for plaintiff's termination and advised her of a pretermination hearing scheduled for February 1, 1988. The notice to terminate plaintiff's employment apparently was delivered to her on January 26, 1988. Plaintiff Sauers alleges that this notice did not permit her a reasonable time to prepare for such hearing. The outcome of the pretermination hearing was adverse to plaintiff Sauers, and on February 10, 1988, she appealed her termination to the Salt Lake County Career Service Council, alleging

1. On October 15, 1986, plaintiff Sauers had filed a charge of discrimination with the Utah Anti-Discrimination Division and the EEOC. In her charge, plaintiff listed Bill Hyde, Acting County Attorney; the Salt Lake County Attorney's Office; Michael Stewart, Salt Lake County Commissioner; and Donald Sawaya, Deputy Salt Lake County Attorney, as the persons who had discriminated against her, and mentioned the names of Ted Cannon and Don Harmon in the body of her charge. Plaintiff Sauers' June 1987 grievance did not name any of the defendants in this action, omitting defendants Salt Lake County, Ted Cannon, Sam Dawson, David Yocom, Donald Sawaya, Michael Stewart, Bart Barker, Dave Watson, or Jerry Campbell, as parties to that grievance. The only parties named were her supervisors, Jeri Pace, Roger Blaylock and Roger Livingston, and plaintiff apparently made no claims relating to the violation of her civil rights under the Constitution and laws of the United States.

2. That section provides, in pertinent part:
   (1) There shall be in each county establishing a system a three-member bipartisan career service council appointed by the governing body. The members of the council shall be persons in sympathy with the application of merit principles to public employment. The council shall hear appeals not resolved at lower levels in the cases of employees suspended, transferred, demoted, or dismissed as well in the case of other grievances not resolved by the grievance procedure at the division or departmental level; it shall review written appeals in cases of applicants rejected for examination; and shall report final binding appeals decisions, in writing, to the governing body. However, a right of appeal to the district court under the provisions of the Utah Rules of Civil Procedure shall not be abridged.
   Utah Code Ann. § 17–33–4(1).

that she was terminated because of her complaints about Ted Cannon's sexual harassment, her involvement as a witness in the upcoming trial against Ted Cannon, Sam Dawson, and the County, and her filing of a grievance in these matters. The only party against whom plaintiff's grievance regarding the termination of her employment was directed was Mr. Ellet, the pretermination hearing officer,[3] and not any of the defendants in this action. Subsequently, a hearing was held before the CSC, and on May 20, 1988, the CSC entered its Findings of Fact, Conclusions of Law, and Decision, upholding plaintiff Sauers' termination.

Plaintiff Sauers maintains that her present claims for denial of her rights under the U.S. Constitution and federal laws were not before the CSC, and that the CSC did not decide those claims and could not have done so because there is no substantial identity of issues presented to this Court as compared with those presented in the action before the CSC. She further maintains that her grievances before the Council were not maintained against the defendants named in the present action, but only against certain named supervisors, such that there is no substantial identity of parties named as defendants between the two actions. Plaintiff Sauers also claims that the CSC's procedures did not assure that her grievances were fully and fairly litigated in that forum, thereby denying her due process.[4]

Following the decision of the CSC, plaintiff received a Right to Sue letter from the EEOC, dated April 7, 1988. In that letter, plaintiff was informed that she had ninety days to file a discrimination action in the U.S. District Court, that she could request appointment of an attorney by the U.S. District Court, and that she could contact her EEOC representative if she had questions about her lawsuit. Plaintiff filed an *in forma pauperis pro se* complaint (the "pro se complaint") in this court on July 5, 1988, wherein she named the Salt Lake County Attorney's Office, David Yocom, Ted Cannon, Donald Sawaya, Michael Stewart, and Dave Watson as defendants. Plaintiff alleged in the body of her pro se complaint that Ted Cannon sexually harassed her during September 1986, and that she was later retaliated against for her sex harassment complaints against Ted Cannon. Under the heading "Cause of Action" on the pro se complaint form supplied to her, plaintiff Sauers inserted the words "See attached" under the sub-heading "Count I" on the form. The attachments to her complaint included the Right to Sue letter previously issued to plaintiff Sauers by the EEOC, and a statement of the basic facts giving rise to her Title VII claims against the defendants. Plaintiff alleges that she did not understand that she should affirmatively assert jurisdiction of her claims against the defendants for unlawful sex discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, and as a result did not do so. Plaintiff alleges that she was indigent, but was told by court personnel that she would have to fill out the complaint form before counsel could be appointed for

---

**3.** The pretermination hearing was conducted by Walter R. "Bud" Ellet, Chief Deputy, Justice Division, Salt Lake County Attorney's Office. Plaintiff contends that Mr. Ellet was not a neutral and unbiased hearing examiner, having personally participated in unlawful sex discrimination and retaliation against her, and having taken personal action to interfere with and prevent her from obtaining the testimony of witnesses willing to support her.

**4.** Plaintiff urges that she was denied due process because:

1. She had no opportunity to conduct discovery to develop evidence and/or witnesses to support her claims against the defendants because defendants prevented plaintiff's co-employees from associating with her;

2. The County Attorney's Office supervisory employees prevented plaintiff's co-workers and supervisors from testifying in her behalf;

3. Members of the County Attorney's Office manipulated and falsified evidence against plaintiff Sauers to justify the adverse personnel actions taken against her; and

4. She did not have counsel appointed to represent her at all stages of the grievance proceedings prior to the hearing of her grievances before the Council, and she could not afford to hire counsel for such proceedings.

her.[5]

On September 29, 1988, plaintiff, through her counsel, filed a Verified Amended Complaint wherein she alleged that in addition to the individual defendants named in her pro se complaint, Salt Lake County, Sam Dawson, Bart Barker, Jerry Campbell and Roger Livingston had violated Title VII, Civil Rights, and various Utah state laws. Plaintiff did not effect service of process on the defendants named in her pro se complaint until after the Verified Amended Complaint had been filed. All of the currently named defendants have now been served with the Verified Amended Complaint and a Summons.[6]

## ANALYSIS

Two Motions to Dismiss are now before the court: defendants' motion to dismiss plaintiff's 42 U.S.C. §§ 1983, 1985(3) and 1986 claims (the "civil rights" claims) and defendants' motion to dismiss plaintiff's Title VII claim.

## I. CIVIL RIGHTS CLAIMS

Plaintiff Sauers alleges that defendants' actions in terminating her employment constitute an infringement of her constitutional rights in violation of 42 U.S.C. §§ 1983, 1985(3) and 1986. Defendants disagree, and maintain that the decision of the Salt Lake County Career Service Council on certain grievances filed by plaintiff Sauers in the course of her employment for Salt Lake County precludes plaintiff Sauers' claims against the defendants in this action under those laws. Defendants also contend that

plaintiff's civil rights claims are based upon the same facts as plaintiff's Title VII claim, precluding plaintiff from asserting those civil rights claims because Title VII is plaintiff's sole federal remedy. The court will address each of these contentions.

### A. *Preclusive Effect of Agency Findings*

■ In *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the U.S. Supreme Court held that

> when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [*U.S. v.*] *Utah Construction & Mining Co., supra,* 384 U.S. [394] at 422 [86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)], federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.[7]

Both parties agree that *Elliott* establishes the proper legal standard, but differ in their interpretation of how the standard applies in this case. Plaintiff Sauers contends that no preclusive effect should be given to any determination of the CSC based on the Supreme Court's decision in *Elliott* because defendants have failed to establish a sufficient identity between the parties, the issues, and the remedies sought by plaintiff in the action before the Career Services Council and in the action before this court.[8] Defendants must dem-

---

5. *See* Affidavit of Debra T. Sauers. The pro se complaint filed by plaintiff Sauers is on a printed form which was apparently supplied to her by a Deputy Clerk of this court. The caption on the form contains the heading "CIVIL RIGHTS COMPLAINT (pursuant to 42 U.S.C. § 1983)."

6. Return of Service has been docketed with the courts as follows: Docket Entry # 8, showing service on defendants Donald Sawaya, Bart Barker, Salt Lake County, Sam Dawson, 9/28/88; # 9, showing service on defendant David Yocom and Michael Stewart, 9/30/88; # 10, showing service on defendant Ted Cannon, 10/4/88; # 13, showing service on defendant Dave Watson, 10/14/88; # 23, showing service on defendant Jerry Campbell, 10/27/88; # 28,

showing service on defendant Roger Livingston, 11/21/88.

7. *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226. The Court in *Elliott* remanded for a consideration of whether the administrative hearing which was held in that case had satisfied the standard enunciated, and whether the factfinding resulting from that hearing would have been given preclusive effect in the Tennessee courts. *Id.* at 799 n. 8, 106 S.Ct. at 3226 n. 8.

8. Plaintiff also urges that no preclusive effect should be afforded for other reasons which this court need not discuss because of the determination here made of insufficient identity between parties, issues and remedies. The other

onstrate such an identity if the CSC decision is to have any preclusive effect in this action.[9]

### 1. Identity of Parties

Plaintiff Sauers brings this lawsuit against Salt Lake County and the following individuals in both their individual and official capacities: Ted Cannon, Sam Dawson, David Yocom, Donald Sawaya, Michael Stewart, Bart Barker, Dave Watson, Jerry Campbell and Roger Livingston. In the hearing before the CSC wherein plaintiff appealed her termination, the named defendants were Walter R. "Bud" Ellet, the hearing officer who conducted the pretermination hearing, and the Salt Lake County Attorney's Office. Thus, there are a number of new defendants here in federal court who were not parties to the action before the CSC. Had the CSC ruled in favor of plaintiff Sauers, these new defendants likely would be in this court arguing that the CSC ruling does *not* have a preclusive effect in this court because they did not have an adequate opportunity to litigate the issues involved in the hearing. Because the majority of defendants here are new parties who were not involved in the action before the CSC, it is clear that there is not a substantial identity of parties in the CSC hearing, as compared with and this action.

### 2. Identity of Issues and Remedies

In this action, plaintiff asserts civil rights claims for defendants' alleged violations of plaintiff's rights under the first, sixth, and fourteenth amendments to the U.S. Constitution. Plaintiff seeks redress for the allegedly wrongful acts of defendants which occurred throughout the length of her employment with the County Attorney's Office, culminating eventually in plaintiff's termination from her position with that office. Both compensatory and punitive damages are sought from defendants.

In contrast, the proceeding held before the CSC concerned only whether plaintiff Sauers was properly terminated from her position with the County Attorney's Office. The parties agree that the power of the CSC extends only to determinations as to whether adverse personnel actions taken against county employees are in violation of Salt Lake County Merit Policies and Procedures. The CSC has no legal power, authority, or expertise to decide whether a county employee's rights under federal law or under the U.S. Constitution have been violated. Further, it appears that the CSC has no authority to award damages or other relief for these violations.[10] The text of the CSC's decision shows clearly that the only issue before the CSC was whether the County Attorney's Office had followed the Salt Lake County Merit Policies and Procedures in terminating plaintiff Sauers:

> This Council unanimously finds that the above Findings of Fact [regarding the Salt Lake County Attorney's Office's actions] meet the criteria of progressive discipline and that the Appellant should be terminated from her employment with Salt Lake County.[11]

It seems erroneous to contend, as the defendants do, that the CSC decision precludes federal court consideration of plaintiff's federal civil rights claims when the CSC opinion clearly demonstrates that virtually none of those claims were ever con-

---

issues raised in opposition to preclusion are: (1) the CSC is not a "state agency"; (2) the CSC did not act in a "judicial capacity"; and (3) in any event, the decision of the CSC would not be given preclusive effect by the Utah courts.

9. This concept stems from the *Elliott* requirement that, during the administrative hearing, the parties had to have been given an adequate opportunity to litigate the issue(s) which in later proceedings are claimed to have preclusive effect. *See Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226–27. Under *Elliott,* parties involved only in the later federal court action may claim that they were not afforded an adequate opportunity

to litigate the issues decided in the administrative hearing, preventing the administrative ruling from having any preclusive effect as to those parties in federal court. Similarly, a significant difference between the issues litigated and the remedies sought by or available to the parties in the two actions would prevent the administrative findings from having a preclusive effect in federal court.

10. *See* Salt Lake County Policy & Procedure #5705, Grievance Procedure.

11. Decision of the Salt Lake County Career Services Council, May 20, 1988, at 7.

sidered by the CSC. The CSC could not have awarded plaintiff the remedies she seeks in this action, making any pursuit of her civil rights claims before the CSC an exercise in futility. Indeed, one of plaintiff's claims in this lawsuit arises from the conduct of the CSC hearing itself. Plaintiff has alleged that the CSC hearing was conducted in an unfair manner, precluding her from adequately presenting her case in violation of her due process rights. Applying the *Elliott* standard to these facts, and taking plaintiff's allegations as true, this court cannot rule that, as a matter of law, plaintiff Sauers had an adequate opportunity to litigate the disputed factual questions at issue in this lawsuit. In the posture of a motion to dismiss, the court must view the facts as alleged in the light most favorable to the non-moving party.[12] Viewed in this manner, it is clear that there is insufficient identity of issues and remedies between the CSC proceeding and this action.

Based upon the foregoing this court holds that the CSC findings are not entitled to preclusive effect in this court in that defendants have failed to show an identity of parties and issues between the CSC action and this lawsuit.[13] Accordingly, defendants' Motion to Dismiss plaintiff's civil rights claims on that basis is denied.[14]

### B. *Title VII as Exclusive Federal Remedy*

■ Plaintiff Sauers has asserted claims in this lawsuit for discriminatory acts un-

der Title VII and for violation of civil rights under §§ 1983, 1985(3) and 1986. Plaintiff's claims are all based on the same set of operative facts. The civil rights claims are based on the alleged violation of plaintiff Sauers' rights to due process, equal protection and federal statutes.[15] The same acts giving rise to the alleged civil rights violations are also claimed to be discriminatory acts prohibited under Title VII. Defendants contend that plaintiff Sauers' civil rights claims asserted in Counts II, III and IV of the Verified Amended Complaint must be dismissed because Title VII constitutes the exclusive remedy for the acts complained of by plaintiff. Plaintiff disagrees, contending that her civil rights claims rest upon rights which are not only protected by Title VII in the employment discrimination context but also by the United States Constitution independent of Title VII. It is thus argued that there is a proper additional basis for an action under §§ 1983, 1985(3) and 1986. The court today holds that Title VII constitutes the sole remedy in such a situation, joining a minority of courts whose views appear closely to parallel Congress' intent to enacting Title VII.

The Tenth Circuit has not yet specifically passed on this issue, although it had the opportunity to do so in *Tafoya v. Adams*, 612 F.Supp. 1097 (D.Colo.1985), *aff'd on other grounds*, 816 F.2d 555 (10th Cir.),

---

12. *See, e.g., Shoultz v. Monfort of Colorado, Inc.*, 754 F.2d 318 (10th Cir.1985), *cert. denied*, 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986).

13. The court need not, and does not, express an opinion as to whether the other *Elliott* requirements are met. *All* of these requirements would have to be met for this Motion to Dismiss to succeed, and because the court today holds that at least one requirement has not been met, defendants' Motion to Dismiss must fail.

14. Defendants contend that the CSC acted in a judicial, or "quasi-judicial," capacity, thereby entitling the findings of the CSC to preclusive effect here, assuming that the other elements of the *Elliott* analysis are met. Because the court today holds that at least one of those other elements, adequate opportunity to litigate the disputed issues, is not met, the court need not address that issue.

15. *See* Verified Amended Complaint, Counts II, III and IV. Presumably "federal statutes" refers to Title VII. A § 1983 action may not be based on the violation of rights created by Title VII. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) (§ 1985(3) retaliation claim); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). Plaintiff's civil rights claims based on the violation of Title VII are dismissed pursuant to *Novotny*, because § 1983 creates no substantive rights—it is a remedial statute only, *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979), and defendants' liability under § 1985(3) and § 1986 is predicated on the § 1983 claim.

*cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). In *Tafoya,* a former Hispanic employee of a local government entity alleged that his employment had been terminated for discriminatory and retaliatory reasons. Plaintiff there sought relief under § 1981, § 1983, and Title VII, with each claim based on the same operative facts. The district court, Judge Kane, dismissed the plaintiff's § 1981 and § 1983 claims holding that "where an employee does not establish an independent basis [for his §§ 1981 and 1983 claims] and the §§ 1981 and 1983 claims are inherently bound up with the Title VII claim, Title VII constitutes the exclusive remedy." *Tafoya,* 612 F.Supp. at 1102. The Tenth Circuit affirmed the judgment of the District Court on other grounds, declining to "test the broader pronouncement of the district court." *Tafoya,* 816 F.2d at 557.[16]

Although the Tenth Circuit did not specifically adopt the district court's reasoning in *Tafoya,* this court does so today. A similar result was rached by Judge Kane in *Reiter v. Center Consol. School Dist. No. 26–JT.,* 618 F.Supp. 1458 (D.Colo.1985). In that case, plaintiff alleged that her employment was terminated by the defendant because of her gender, religion, association with the Hispanic community, and for retaliatory purposes in violation of Title VII. In addition, the plaintiff alleged that she had been deprived of freedom of speech, academic freedom, and freedom of association in violation of §§ 1983 and 1985. Judge Kane found that the employment discrimination which the plaintiff complained of was prohibited by Title VII. *Reiter,* 618 F.Supp. at 462. As to the §§ 1983 and 1985 claims based on alleged deprivations of Constitutional rights, the court held:

> These claims, however, are based on defendant's allegedly discriminatory acts which are prohibited under Title VII. Thus, plaintiff's §§ 1983 and 1985 claims are not independent of her Title VII claim. Title VII, therefore, constitutes the exclusive remedy in this case. Accordingly, plaintiff's §§ 1983 and 1985 claims are dismissed.

*Reiter,* 618 F.Supp. at 1462–63. The same essential result was reached by the Eighth Circuit in *Foster v. Wyrick,* 823 F.2d 218 (8th Cir.1987). In that case a black prisoner brought a § 1983 action alleging race discrimination in the assignment of inmate jobs in violation of the Equal Protection Clause of the U.S. Constitution. The Eighth Circuit agreed with the district court that the discriminatory acts complained of were prohibited by Title VII, and that to allow a § 1983 action based on those same acts would circumvent Title VII's comprehensive remedial scheme.

**16.** In *Tafoya,* Tenth Circuit examined the record and determined that the plaintiff had failed to allege racial discrimination in his termination. As a result, plaintiff's complaint failed to state a cause of action under § 1981, and the § 1983 claim necessarily failed because it was based on a violation of § 1981. *Id.* at 558. In *Meade v. Merchants Fast Motorline, Inc.,* 820 F.2d 1124 (10th Cir.1987), a black employee who was allegedly dismissed because of his race brought a § 1981 action against his employer. The district court granted the defendant's motion to dismiss on the theory that Title VII provides the exclusive remedy for such violations in the employment context. The Tenth Circuit reversed, holding that a plaintiff may assert both a Title VII claim and a *§ 1981 claim* based on the same set of facts. In doing so, the court distinguished the Supreme Court's holding in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979):

> In *Novotny,* the Supreme Court held that rights created by Title VII may not be asserted

as the basis for a cause of action under 42 U.S.C. § 1985(3). Obviously, the *Novotny* holding itself, which dealt only with § 1985(3), is not controlling in the present context. More importantly, *Novotny* rests on a ... rationale, ... which is [in]applicable to § 1981.... [T]he Supreme Court emphasized that § 1985(3) is a purely remedial provision that creates no substantive rights.... Consequently, the § 1985(3) remedy cannot stand independently of Title VII when the underlying right to be vindicated is created by Title VII. However, § 1981 differs from § 1985(3) in this important respect, as the Court expressly recognized in *Novotny.* In addition to its remedial role, § 1981 provided a substantive right against racial discrimination in employment before the enactment of Title VII, and it is that right—not the similar, but supplementary one created by Title VII—upon which plaintiff's § 1981 claim rests.

*Meade,* 820 F.2d at 1125–26.

*Foster,* 823 F.2d at 221.[17]

In the case at bar, plaintiff Sauers' civil rights claims are based on acts which are prohibited under Title VII. Thus, plaintiff's civil rights claims are not independent of her Title VII claim, and Title VII constitutes the exclusive remedy in this case. Allowing plaintiff Sauers to pursue her civil rights claims in this case would circumvent Title VII's comprehensive scheme. Accordingly, plaintiff Sauers' §§ 1983, 1985(3), and 1986 claims are dismissed.

## II. TITLE VII CLAIM

Defendants contend that plaintiff's Title VII claim against them should be dismissed, arguing that the claim was not filed within the applicable limitations period.[18]

On July 5, 1988, plaintiff Sauers filed an *in forma pauperis pro se* complaint (the "pro se complaint") setting out the facts underlying plaintiff's claims of sexual discrimination, sexual harassment, and retaliation.[19] Defendants claim that because notice was not served on them within the 90–day Title VII limitations period, plaintiff's action was not "commenced" before the limitations period had run, and thus plaintiff's claims must be dismissed. The court disagrees. A lawsuit is "commenced" when the complaint is filed, and so long as notice is given within 120 days of the filing of the complaint pursuant to FRCP Rule 4(j), the date of giving notice is irrelevant. *See, e.g., Del Raine v. Carlson,* 826 F.2d 698, 706 (7th Cir.1987). Plaintiff's pro se complaint was filed July 5, 1988, making November 23, 1988 the last day for process to be served in connection with the pro se complaint under Rule 4(j). All defendants in this action were served with a summons and complaint before that date.[20]

Defendants also contend that plaintiff's pro se complaint, filed within ninety days from the April 7, 1988 Notice of Right to Sue, did *not* toll the ninety day filing period for filing a cause of action under Title VII because it specifically mentioned only 42 U.S.C. § 1983, rather than Title VII. This contention requires discussion as to the sufficiency of the pro se complaint and whether, if sufficient, it applies to all defendants named in the present complaint.

### A. *Sufficiency of Pro Se Complaint*

▆ "[F]actual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the ground upon which it rests, thereby enabling a defendant to prepare a responsive pleading." *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1388 (10th Cir.1980). Further, under the Federal Rules of Civil Procedure, ordinarily a complaint must only contain a short and plain statement of the grounds on which the court's jurisdiction depends. *See* Fed.R.Civ.Proc. 8(a)(1).

In *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), the Supreme Court held that an EEOC right-to-sue notice standing alone cannot serve as a valid form of complaint under Rule 8 of the Federal Rules of Civil Procedure. The Supreme Court held that the notice which was filed contained no statement of the factual basis for the claim of Title VII discrimination. The Court stated that it could find no satisfac-

---

17. *But see, e.g., Keller v. Prince George's County Dept. of Social Services,* 827 F.2d 952 (4th Cir.1987); *Jurado v. Eleven–Fifty Corp.,* 813 F.2d 1406 (9th Cir.1987); *Daniels v. Board of Educ.,* 805 F.2d 203 (6th Cir.1986); *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299 (7th Cir.1985).

18. Defendants also assert that Title VII can create no right of action against fellow employees or co-workers. However, the term "employer," as used in 42 U.S.C. § 2000e–5(b), includes supervisory co-employees of the plaintiff employee. *See, e.g., Hamilton v. Rodgers,* 791 F.2d 439,

442–43 (5th Cir.1986) (immediate supervisors of a plaintiff employee, as agents of the employer, are included within the term "employer" under Title VII). In this action, plaintiff Sauers has allegedly sued only supervisory employees of Salt Lake County, the defendant employer. Thus, defendants' Motion to Dismiss must be denied on this point.

19. *See* Docket Entry # 2, July 5, 1988.

20. *See supra* note 5.

tory basis for giving Title VII actions special status under the Federal Rules of Civil Procedure, holding that a later-filed amended complaint could not cure the defective pleading because the EEOC right-to-sue letter was not an "original" pleading and did not give the defendant fair notice of the plaintiff's claim and the factual grounds for the claim.[21]

Plaintiff Sauers' pro se complaint is distinguishable from the "complaint" considered in *Baldwin.* Her complaint, both in the body thereof, and in the materials attached thereto, does contain statements regarding the factual basis for her claims against the defendants for subjecting her to unlawful sex discrimination, sexual harassment and retaliation.[22] Because jurisdiction to adjudicate violations of Title VII is conferred on the federal courts by Title VII itself, the jurisdictional paragraph of a Title VII complaint normally contains a reference to Title VII. However, failure to state the grounds on which jurisdiction depends will not automatically result in dismissal of a complaint if the factual basis for the claim is stated. Leave to amend the complaint in order to cure this defect is normally freely given. *Barlow v. Pep Boys, Inc.,* 625 F.Supp. 130, 133 (E.D.Penn. 1985). This court holds that the pro se complaint was sufficient to state a claim under Title VII.[23]

### B. Relation Back Based Upon Sufficiency of Notice in Pro Se Complaint as to Parties Named in Subsequent Complaint

As to those defendants named in the pro se complaint, the Title VII claims denominated in the Verified Amended Complaint relate back to the filing of the pro se complaint under Rule 15(c) of the Federal Rules of Civil Procedure.[24] However, as to defendants Dawson, Barker, and Livingston, who were not named in the pro se complaint,[25] a different analysis applies because the Verified Amended Complaint in effect adds them as parties, a situation which is also governed by FRCP, Rule 15(c):

An amendment *changing the party against whom a claim is asserted* relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

(Emphasis added). That portion of Rule 15(c) which relates to the adding of a party has been interpreted by the Supreme Court

---

**21.** *See also Curelaru v. Utah,* No. C87–524G (D.Utah Aug. 3, 1988) (order granting partial summary judgment against plaintiff for failure to timely file Title VII complaint).

**22.** A copy of plaintiff Sauers' Right to Sue Letter was attached to her pro se complaint.

**23.** A situation similar to the present one was considered in *Mahroom v. Defense Language Institute,* 732 F.2d 1439 (9th Cir.1984), wherein the Ninth Circuit held that a Title VII plaintiff who filed her right-to-sue notice and a copy of the EEOC's decision in a letter to the court within the statutory time limit for filing suit was not precluded from maintaining her Title VII suit even though her formal complaint was filed after the time limit expired. Her letter to the court indicated that she intended to proceed, but was having difficulty securing a lawyer. The court allowed the "complaint" to stand, holding that a *pro se* litigant should not be barred from court for failing to label material

containing the relevant facts and the nature of the claim as a "complaint."

**24.** That section provides, in pertinent part:
(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . .
Fed.R.Civ.Proc. Rule 15(c).

**25.** Although Salt Lake County was not specifically named in the pro se complaint, the inclusion of the Salt Lake County Attorney's Office and the Salt Lake County Commission as defendants in that pleading sufficiently identified Salt Lake County as a defendant in this action for purposes of Rule 15(c).

in *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986):

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 29, 106 S.Ct. at 2384.

The fourth factor, that of notice within the limitations period, is the key here. It is derived from the language of Rule 15(c), which provides that an amendment adding a party relates back if *"within the period provided by law for commencing the action against the party to be brought in by amendment that party* (1) *has received such notice* of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) *knew or should have known* that, but

for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ. Proc. 15(c) (emphasis added).[26] Under this analysis, the parties to be brought in (defendants Dawson, Barker, and Livingston) must have received *notice of the institution of this action* within the 90 day limitation period provided by law under Title VII. Plaintiff Sauers filed her pro se complaint on July 5, 1988, the 89th day of the limitations period. Plaintiff admits that she did not serve *any* of the defendants with a summons or complaint until after the ninety day limitations period had expired, negating the argument that notice to defendants Dawson, Barker, or Livingston could be imputed from notice served on other defendants within the ninety day period. Plaintiff does not allege that defendants Dawson, Barker, and Livingston had any other notice of the institution of her action, whether actual or constructive.[27] Thus, although plaintiff Sauers' pro se complaint was timely filed, "notice *within the limitations period* to the *part[ies] named in the complaint"* was not achieved. Accordingly, plaintiff's Title VII claims against defendants Dawson, Barker, and Livingston must be, and are, dismissed.[28]

---

**26.** *See also Tolman v. IHC Hospitals, Inc.,* No. C85–75G (D.Utah Dec. 12, 1986) (order denying motion for summary judgment based on relation-back doctrine).

**27.** Plaintiff does allege that "on November 9, 1987, and May 18, 1988, plaintiff Sauers' mother, Mrs. Dorothy Tueller, appeared before the Salt Lake County Commission, including the defendant Commissioner Bart Barker, and notified the Commission that plaintiff Sauers had been subjected to unlawful sex discrimination and retaliation for complaining of the same in the course of her employment at the Salt Lake County Attorney's Office, and that plaintiff Sauers would have to file a lawsuit if no action was taken to remedy the effects of the discrimination to which plaintiff Sauers had been subjected." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Title VII Claim, at 6. However, such a statement by plaintiff Sauers' mother is not sufficient to constitute notice of the *actual institution* of a lawsuit against these defendants.

**28.** Defendants have argued that those defendants who were not named in plaintiff's EEOC charges may not properly be defendants in this

action; however, based upon the court's ruling today, the only defendant as to whom this question need be discussed is defendant Yocom. It is undisputed that defendant Yocom was not affiliated with the County Attorney's Office until after plaintiff Sauers had filed her EEOC complaint in October 1986. Defendant Yocom is involved in this lawsuit only as a result of his alleged retaliation against plaintiff Sauers after his election as County Attorney in November 1986. It is undisputed that plaintiff Sauers could not have anticipated defendant Yocom's retaliation against her at the time she filed her original charge of discrimination. A plaintiff in a Title VII action in federal court need not exhaust administrative remedies, including the filing of additional EEOC complaints, before seeking judicial review of a *retaliation claim* that grows out of an earlier charge of discrimination filed with the EEOC. *Gottlieb v. Tulane Univ.,* 809 F.2d 278 (5th Cir.1987); *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir.1981). Thus, defendant Yocom is a proper defendant in this action.

This Memorandum Decision and Order shall govern and counsel need not prepare any further order.

IT IS SO ORDERED.