**James M. DAY, Plaintiff-Appellant,**

v.

**WAYNE COUNTY BOARD OF AUDITORS, Wayne County, Civil Service Commission, County of Wayne, and Wayne County Board of Commissioners, Defendants-Appellees.**

No. 83–1378.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 29, 1984.

Decided Dec. 6, 1984.

Eleanor Cattron Smith, argued, Detroit, Mich., for plaintiff-appellant.

W.B. McIntyre, Jr., Bob Anderson, argued, Detroit, Mich., for defendants-appellees.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and GIBBONS, District Judge.*

LIVELY, Chief Judge.

This is an appeal by the plaintiff who is dissatisfied with the relief granted to him by the district court. The district court referred plaintiff's employment discrimination claim to a master who found that the defendant, Wayne County Board of Auditors, a state agency, discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964 (the Act) by retaliating against him for filing a claim of discrimination with the Equal Employment Opportunity Commission (EEOC). However, the master also held that the plaintiff did not prove racial or age discrimination and that the plaintiff failed to establish a prima facie case for recovery of monetary damages under 42 U.S.C. § 1981 or § 1983. The district court affirmed these holdings. The important question presented by this appeal is whether, upon finding a violation of Title VII, the district court erred in holding the plaintiff failed to establish a prima facie case of violation of § 1983.

### I.

The plaintiff, a white male, was hired by the Wayne County Board of Auditors in 1970. Over the next eight years the plaintiff sought and was denied several promotions and was twice demoted. On these occasions he filed charges with various state agencies and the EEOC which were largely unproductive. In 1978, after the plaintiff objected to the reclassification of another employee, the defendant demoted him. The plaintiff then filed yet another complaint with the EEOC which led to the present action. After receiving a right to sue letter the plaintiff filed suit in the district court charging violation of Title VII

---

* The Honorable Julia S. Gibbons, Judge, United States District Court for the Western District of Tennessee, sitting by designation.

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1976), and the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983 (1976). In his complaint the plaintiff sought a declaratory judgment and injunctive relief as well as compensatory and punitive damages and reinstatement to the position he held before his most recent demotion.

Upon determining that the case had not been scheduled for trial within 120 days after the issues were joined, the district judge referred the matter to a magistrate "as Master pursuant to Rule 53 ...." The order of reference was made "[o]n the authority of 42 U.S.C. § 2000e–5(f)(5)" which provides:

> It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

The magistrate conducted a trial and issued his "Master's Report and Recommendations" in which he found that the plaintiff's employer had demoted him in retaliation for filing discrimination charges. Such retaliation is specifically prohibited by § 704 of the Act,. 42 U.S.C. § 2000e–3(a). The master found, however, that the plaintiff had failed to establish discrimination on the basis of age or race. In his report the master recommended an award of back pay and compensatory damages to the plaintiff for violation of Title VII and an injunction requiring the defendants to permit Day to sit for future competitive or promotional examinations. The master found that the plaintiff had not proven a violation of § 1981 or § 1983 and denied punitive damages as relief sought only in connection with the § 1981 claim.

The plaintiff filed objections to the master's report and the district court held a hearing. Thereafter the district judge filed a memorandum opinion in which he agreed with the master's findings with respect to violations, but ordered different relief. The district court allowed back pay representing the difference between the plaintiff's actual earnings and the amount he would have earned except for the defendants' discrimination by retaliation. The district court also awarded "front pay" by requiring the defendants to pay the plaintiff at the rate of the position from which he was demoted until his retirement date or until he is promoted to a position which pays an amount equal to or greater than that of the position he held before demotion. The district court denied compensatory and punitive damages, finding that such damages are not permitted for Title VII violations, and accepting the master's conclusion that the plaintiff had failed to establish a violation of § 1981 or § 1983. The district court enjoined the defendants from retaliating against the plaintiff for this litigation and denying him the opportunity to take any examination for promotions "for which he is otherwise entitled to sit." The plaintiff appealed from the district court judgment.

## II.

The plaintiff's first contention on appeal requires little discussion. In accepting the master's findings of fact, the district court stated that they were not "clearly erroneous." The plaintiff argues that the district court should have reviewed the master's findings under a *de novo* standard as required by 28 U.S.C. § 636(b)(1), which relates to findings and recommendations of magistrates. The problem with this argument is that Day's case was not referred to the magistrate pursuant to 28 U.S.C. § 636. The order of reference was made "[o]n the authority of 42 U.S.C. § 2000e–5(f)(5)" and stated that the magistrate was appointed "as Master pursuant to Rule 53 of the Federal Rules of Civil Procedure ...." Rule 53(e)(2) provides, "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." The plaintiff did not object to the order of reference and recognized

throughout the proceedings that the magistrate was appointed as, and was acting as, a master in this case. The district court correctly reviewed the findings of fact under the clearly erroneous standard. None of the arguments of the plaintiff on this issue recognizes the fact that the district judge followed the procedures of § 2000e–5(f)(5) with exactitude and reviewed the master's findings in precisely the manner provided for when an order of reference is made pursuant to that provision of Title VII.[1]

### III.

The district court accepted, without discussion, the master's holding that the plaintiff failed to make a prima facie case for relief under 42 U.S.C. § 1981 or § 1983. In arguing her objections to the master's report before the district court, counsel for the plaintiff stated: "We have not waived our right to damages under 1983 and it's my understanding of the law that the Master was correct in finding since it is a state agency there would be no liability under 1981 which is probably why he didn't find liability under 1983." Later in her presentation, counsel argued, "[I]f we prevail under Title VII we can see no reason why there should not also be liability under 42 U.S.C. 1983." From these statements and from the arguments in appellant's brief in this court we conclude that plaintiff abandoned his § 1981 claim. However, the plaintiff continues to contend that he was entitled to monetary damages under § 1983.

### A.

■ Two elements are required for a prima facie case under § 1983: There must be conduct by someone acting under color of state law and this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101

S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Section 1983 is a remedial statute which does not create substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 616–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). It provides a remedy for the violation of rights created elsewhere. As the Supreme Court made clear in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), § 1983 provides a remedy for actions under color of law which contravene federally protected rights, whether those rights derive from the Constitution or from a federal statute.

It is not denied that the defendants in this case acted under color of state law. Nor do the defendants question the finding that they violated Title VII, a federal statute, by retaliating against the plaintiff for his complaints and protests concerning their employment practices. Thus, the two elements required for a prima facie case under § 1983 appear to have been satisfied. This leads to the inquiry whether there is something about the relationship between Title VII and § 1983 which requires a different conclusion.

### B.

■ Where a statute provides a particular procedure and an exclusive remedy for violations, § 1983 may not be used to obtain additional remedies. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). However, the fact that a statute contains a comprehensive remedial scheme does not necessarily rule out the availability of all additional remedies under § 1983. In *Smith v. Robinson,* —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court held that the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq. (EHA), precluded the assertion under § 1983 of equal protection claims virtually identical to EHA claims, but did not rule out the assertion of independent due process claims. The Court observed that it will not lightly determine that Congress

---

**1.** *Hill v. Duriron Company, Inc.,* 656 F.2d 1208 (6th Cir.1981), involved an order of reference to a magistrate, as a magistrate, not as a master. The order of reference did not mention 42 U.S.C. § 2000e–5(f)(5). Under these circumstances we held the plaintiffs were entitled to *de novo* review. *Hill* provides no support to the plaintiff in this case.

intended to preclude reliance on § 1983 for substantial federal claims, but that Congress does have the authority to repeal § 1983 or replace it with respect to particular rights by providing an exclusive remedy elsewhere. "The crucial consideration is what Congress intended." 104 S.Ct. at 3469–70 (citations omitted). Our task, then, is to determine whether Congress intended to permit resort to § 1983 for violations of Title VII when it adopted the 1972 amendments which made that statute applicable to discrimination in public employment.

## IV.

### A.

When originally enacted in 1964, Title VII applied only to private employment. In cases where an employee sought relief under Title VII and § 1981 the Supreme Court has interpreted Title VII as providing a non-exclusive remedy for discrimination by private employers. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974), the Supreme Court stated:

[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

In *Johnson v. Railway Express Agency*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975), the Court wrote:

Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.

The Court noted legislative history which stated specifically that Title VII and § 1981, which derives from the Civil Rights Act of 1870, "augment each other and are not mutually exclusive." *Id.*, quoting H.R. Rep. No. 92–238, p. 19 (1971).

The Supreme Court reached a different conclusion with respect to 42 U.S.C. § 1985(3) (1976), the surviving portions of § 2 of the Civil Rights Act of 1871. In *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), a discharged employee of a private employer claimed that he was fired in retaliation for supporting female employees who complained of disparate treatment. He sought damages under § 1985(3). After reviewing the comprehensive structure and scope of Title VII the Court concluded:

If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375–76, 99 S.Ct. at 2350–51 (footnote omitted).

### B.

The Supreme Court has not decided whether a plaintiff who claims discrimination in employment practices by a state official or state agency may bring an action under both Title VII and § 1983. However, the 1972 amendment to Title VII which forbade discrimination in employment by the federal government as well as by state and local employers was discussed in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). There the Supreme Court concluded that in the 1972 enactment of § 717 which deals only with federal employees, Congress intended "to create an exclusive, pre-emptive administrative and

judicial scheme for the redress of federal employment discrimination." *Id.* at 829, 96 S.Ct. at 1966. The Court found that employment discrimination by the federal government clearly violated the Constitution and a statute before adoption of the 1972 amendment, but that the remedies were ineffective. Relying on the established rule that a precisely drawn, detailed statute preempts a more general one, the Court held that a federal employee claiming job discrimination may proceed only under Title VII, and may not secure additional remedies by proceeding also under § 1981.

The Court in *Brown* recognized that a different conclusion had been reached in *Johnson* v. *Railway Express Agency,* but found that decision "inapposite." *Id.* at 833, 96 S.Ct. at 1968. *Johnson* was distinguished as applying to private rather than public employment and as having rested upon explicit legislative history of the 1964 Act which made it clear that the provisions of Title VII and § 1981 are not mutually exclusive. The legislative history of the 1972 amendments was found to lead to the opposite conclusion with respect to § 717.

### V.

 Though the issue is not without doubt, we believe Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII. Like § 1985(3), § 1983 creates no substantive rights; it only provides a remedy. It would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983. Thus, we believe the reasoning of *Novotny* applies. The Supreme Court's conclusions in *Brown* v. *GSA* are also persuasive. Both federal employees and state and local employees were brought within the protection of Title VII by the 1972 amendments. In *Brown,* the Court found *Johnson* v. *Railway Express Agency* "inapposite" because that case dealt with pri-

vate as opposed to public employment. It can easily be inferred that Congress intended, by bringing public employment under the Title VII umbrella, to make the comprehensive provisions of that statute the exclusive remedy for violations of its terms. As the Supreme Court stated in *Middlesex County Sewerage Authority* v. *National Sea Clammers Association,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), after noting the comprehensive nature of a pair of federal statutes, "in the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."

The legislative history of the 1972 amendments does not indicate a contrary congressional intent. The House Report on the 1972 amendments states:

> In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... The bill, therefore, by extending jurisdiction to State and local government employees does not affect *existing* rights that such individuals have already been granted by previous legislation.

H.R. Rep. No. 92–238, reprinted in 1972 U.S. Code Cong. & Adm. News 2137, 2154 (emphasis added). We believed the committee referred to the right to sue under § 1983 for constitutional violations or for violation of statutes which protected such employees before the enactment of the 1972 amendments. Claims under these existing laws were not affected; they could be pursued along with claims under Title VII for the purpose of obtaining additional remedies. However, we do not read this language as expressing an intent that where employer conduct violates only Title

VII, which created new rights and remedies for public employees, an aggrieved employee may sue under both Title VII and § 1983.

This court has previously held that an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution. *Grano* v. *Department of Development, City of Columbus*, 637 F.2d 1073 (6th Cir.1980). That decision is not affected by the present one. Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII. Here the district court found that the defendants did not discriminate against the plaintiff. The only wrongful act was their retaliation for the plaintiff's actions, a violation of Title VII. We conclude that Congress did not intend this violation to be the basis of a § 1983 claim.

## VI.

The plaintiff also argues that the attorney fees awarded by the district court were inadequate. Since the motion for allowance of fees was not made until after the notice of appeal had been filed, the issue of attorney fees is not before this court. The mere filing of a supplemental appendix did not bring to this court for review an order of the district court which was not included (and could not have been included) in the designation of "the judgment, order or part thereof appealed from" in the notice of appeal. Rule 3(c), Federal Rules of Appellate Procedure.

## CONCLUSION

The district court did not abuse its discretion in fashioning a remedy for the violation of Title VII. Nor did it commit error in dismissing the plaintiff's § 1983 action when the only unlawful act proven by the plaintiff was violation of the provision of Title VII which makes it illegal for an employer to retaliate for an employee's charges of discrimination.

The judgment of the district court is affirmed.