**Rodney N. FAUSER, Plaintiff,**

v.

**MEMPHIS HOUSING AUTHORITY, Dwight R. Montgomery, and Cary C. Woods, Defendants.**

**No. 89–2545–TUA.**

United States District Court, W.D. Tennessee, W.D.

Sept. 17, 1991.

Hite McLean, Jr., Memphis, Tenn., for plaintiff.

Harold D. Archibald, Clarence Halmon, Memphis, Tenn., for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiff Rodney N. Fauser filed this lawsuit on July 3, 1989 alleging violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the United States Constitution. Plaintiff contends that defendants Memphis Housing Authority ("MHA") and Dwight R. Montgomery discriminated against him based on his race, white, in his nonselection to the position of executive director of MHA, and that MHA and defendant Cary L. Woods discriminated against him on account of his race in the terms and conditions of his employment as deputy director of MHA, and in terminating his employment as deputy director of MHA. In addition, plaintiff asserts that he was terminated in retaliation for having filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff seeks declaratory and injunctive relief, reinstatement, backpay, compensatory damages and punitive damages.

Presently before this court is defendants' Motion to Dismiss and/or for Partial Summary Judgment pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Proce-

dure. In their motion, defendants contend the complaint should be dismissed as to Woods and Montgomery in their individual capacities because they are entitled to qualified immunity or that summary judgment of qualified immunity should be granted for the individual defendants based on the record.[1] In addition, defendants contend that plaintiff's claim against MHA and the individual defendants for punitive damages should be dismissed. Further, defendants contend that plaintiff is not entitled to backpay for any period after September 15, 1989, because he failed to mitigate his damages as provided in 42 U.S.C. § 2000e–5(g).

## I. QUALIFIED IMMUNITY

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court adopted an objective test for determining whether the doctrine of qualified immunity applies. *Id.* at 818–19, 102 S.Ct. at 2738–39. Under this test, government officials performing discretionary duties will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court added that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Relative to this inquiry, this court must determine whether, considering the law as it existed at the time defendants took the challenged actions in 1989, reasonable officials in defendants' positions could have believed their conduct was lawful. *Id.* at 641, 107 S.Ct. at 3039–40; *Poe v. Haydon*, 853 F.2d 418, 423–24 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). Moreover, in the context of a racial discrimination claim which requires proof of intent, this circuit has recognized that the "objective legal reasonableness" of a public official's conduct will turn, necessarily, on whether the official's conduct was motivated by impermissible racial animus or by a legitimate concern for the efficiency of the workplace. *Poe*, 853 F.2d at 431. Thus, although *Harlow* and its progeny prohibit an inquiry into intent as it bears on a defendant's knowledge of the law, it is appropriate to consider the official's motive or intent in carrying out the challenged conduct in order to determine if defendant's conduct amounts to a violation of law. *Id.*

Once the issue of qualified immunity is raised, plaintiff must identify the clearly established law and present facts which, if true, demonstrate that the defendants' conduct violated clearly established law. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987). Thereafter, this court must determine whether the undisputed facts reflect as a matter of law that defendants did not violate plaintiff's clearly established legal rights. *Poe*, 853 F.2d at 425. If defendants, as movants, establish an absence of a genuine issue of material fact as to the truth of plaintiff's allegations that defendants violated clearly established law, then defendants' motion for summary judgment on the basis of qualified immunity must be granted. *Id.* Conversely, if the record reflects that there is a genuine issue of material fact "involving an issue upon which the question of immunity turns" or if the undisputed facts reflect that defendants' conduct indeed violated clearly established law, then defendants' motion must be denied. *Id.* at 426. *See also Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir.1989).

### A. CARY C. WOODS

Plaintiff charges that defendant Woods adversely altered the terms and conditions of his employment and terminated his employment on the basis of his race in violation of 42 U.S.C. § 2000e *et seq.* Additionally, plaintiff charges that the timing of his termination was influenced by the fact that plaintiff had filed a complaint with the EEOC.

---

**1.** Because the court has gone outside the pleadings in its review of the qualified immunity issue, the motion on this issue is being treated as a motion for summary judgment under *Fed. R.Civ.P.* 56. Plaintiff has been afforded an opportunity to respond with Rule 56 materials.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful for an employer[2] to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). In addition, Title VII provides that it is unlawful for an employer to discriminate against an employee because he has filed a charge pursuant to 42 U.S.C. § 2000e *et seq.* Title VII protects whites as well as minorities. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 279–80, 96 S.Ct. 2574, 2578–79, 49 L.Ed.2d 493 (1976).

The undisputed facts reflect that plaintiff and Woods both competed for the position of executive director of MHA. (Woods Deposition, pp. 21, 28–33; Fauser Depo., No. 1, pp. 68, 80–82). Woods, who is black, was selected as executive director of MHA and Fauser retained his position as a deputy director. Shortly after he began working at MHA in February of 1989, Woods changed the organizational structure of MHA to include a "tri-deputatee" system. (Woods Depo., pp. 114, 119–23, 169–70). As a result, some of plaintiff's responsibilities were assigned to two other deputy directors. (Woods Depo., pp. 86–87). Thereafter, plaintiff was relocated to another office located in the rear of the building and his car allowance was reduced. (Woods Depo., pp. 122–23, 127–28, 131–32, 208–09; Fauser Depo., No. 1, p. 100). Under the new organizational structure, white employees initially reported to plaintiff and black employees reported to the other directors, both of whom were black. (Woods Depo., pp. 88, 141–42, 167–68; Fauser Depo., No. 2, p. 42). However, Woods testified this was "happenstance," and was later rectified. (Woods Depo., p. 88).

On March 27, 1989, Woods left Memphis to meet with Housing and Urban Development (hereinafter "HUD") officials in Nashville and directors of an "Oasis Program" in Florida. (Woods Depo., pp. 142–44). Around or about this time, MHA was negotiating with union employees, some of whom went on strike before Woods left town or shortly after he left. (Woods Depo., pp. 144–45). During Woods' absence, plaintiff and Harold Whalum, one of the new black deputy directors, were left in charge of operations at MHA. (Woods Depo., p. 146). Prior to Woods' departure, a written strike plan had been developed. (Woods Depo., pp. 145–47). According to the strike plan, the director of security was to be contacted in the event of violence. (Woods Depo., pp. 146–47). Notwithstanding the strike plan, plaintiff and Whalum talked to the Mayor of Memphis regarding police assistance after violence erupted during the strike. (Fauser Depo., No. 1, p. 97; Woods Depo., pp. 146, 152–53).

By letter dated March 31, 1989, the attorney for plaintiff notified Woods that plaintiff had sought legal advice regarding an alleged denial of his equal employment opportunities by MHA. (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Exhibit Attached). Subsequently, on April 28, 1989, plaintiff was reprimanded for, among other things, contacting the Mayor for assistance during the strike. (Woods Depo., pp. 180–82, 210). Whalum was also reprimanded for his involvement in contacting the Mayor. (Woods Depo., p. 153). On or about May 22, 1989, Woods informed plaintiff that his employment would be terminated by July 1, 1989. (Woods Depo., pp. 187, 197). Thereafter, on May 30, 1989, plaintiff filed a notice of charge of discrimination with the EEOC. (Woods Depo., p. 194). Finally, on June 15, 1989, Woods notified plaintiff that he was to turn in his keys by 4:30 p.m. (Woods Depo., p. 198). In a subsequent termination notice, dated June 30, 1989, Woods listed the reasons for plaintiff's termination as insubordination and violation of

---

**2.** "Employer" is defined at 42 U.S.C. § 2000e(b) as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." This broad definition includes an agent of the employer if he, by virtue of a supervisory position, participates in the discriminatory actions which are the subject of the claim. *Hamilton v. Rodgers*, 791 F.2d 439 (5th Cir.1986); *see also*, *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982) (dictum).

policies and procedures. (Woods Depo., p. 211). In an earlier memorandum, dated June 15, 1989, Woods listed plaintiff's lack of support for decisions made by his administration as an additional reason for termination. (Woods Depo., p. 200).

The record reflects that there were numerous other memoranda written between plaintiff and Woods regarding matters at MHA. (Woods Depo., pp. 112, 123–24, 132, 142, 182, 185). The record also reflects that shortly after Woods became executive director of MHA, he informed plaintiff that he wished to maintain a formal relationship and he therefore desired that plaintiff address him as "Mr. Woods" and advised plaintiff that in return he would address him as "Mr. Fauser." (Woods Depo., pp. 79–83). According to Woods, this rule is applicable to all his relationships at MHA. (Woods Depo., p. 83). Plaintiff acknowledges that this conversation occurred. (Fauser Depo., No. 1, p. 99). During his deposition, Woods testified that despite this conversation Fauser addressed him by his first name on three occasions. (Woods Depo., pp. 201–02). Plaintiff, on the other hand, states that other than after he was fired, he remembers only one incident which occurred in March or April of 1989 when he addressed Woods by his first name. (Fauser Depo., No. 1, p. 100).

Next, Woods asserts that plaintiff was terminated for violating policies and procedures. Specifically, Woods contends plaintiff violated policy and procedure when he contacted the Mayor notwithstanding the strike plan. Woods also claims plaintiff violated policy by his excessive absenteeism. (Woods Depo., pp. 158, 204–05). Woods testified that staff meetings were generally held on Fridays and he noticed that plaintiff took an unusual amount of Fridays off of work. Although Woods testified that he was not aware of plaintiff's taking off any time without prior approval, he believed that plaintiff's high amount of absences from staff meetings may have caused him to act out of "ignorance" of the strike plan when he contacted the Mayor. (Woods Depo., pp. 165–66, 185).

Woods further stated that plaintiff was terminated for failing to support decisions made during Woods' administration. According to Woods, plaintiff did not support the Oasis Program, a crime prevention program which he implemented at MHA. Woods also charges that plaintiff and Jerome Ryan, the former executive director, wrongfully withheld monies and/or benefits due to employees at MHA. (Woods Depo., pp. 66–67). Further, Woods charges that plaintiff publicly opposed programs and actions undertaken by Woods' administration. (Woods Depo., pp. 179–196). Moreover, Woods believed that plaintiff was responsible for leaking news to the press regarding matters at MHA. (Woods Depo., pp. 183–84). Woods repeatedly testified that he considered plaintiff to be disloyal and his demeanor disruptive. (Woods Depo., pp. 66, 104, 179, 196). Woods further testified that he sent a letter to all board members regarding his relationship with plaintiff and discussed plaintiff's termination with Commissioners Montgomery and Haizlip. (Woods Depo., p. 192). When asked why he requested plaintiff to turn in his keys on June 15, 1989, Woods testified that his decision was not made at the spur of the moment, but rather was cumulative. (Woods Depo., p. 195). Finally, Woods testified that the timing of plaintiff's termination, which was his decision alone, was based upon his belief that plaintiff was responsible for rifling his files and stealing a tape recording of a board meeting. (Woods Depo., pp. 198–99).

As noted by the defendants, the record does indicate that plaintiff and Woods had difficulties from the beginning. As the newly appointed executive director of MHA, it was Woods' prerogative to restructure the organization so long as it was not based upon impermissible motives. Here, Woods testified in his deposition that he acted in good faith at MHA. (Woods Depo., p. 179).

The issue on this portion of defendants' motion is whether or not Woods is entitled to immunity from suit under the doctrine of qualified immunity which applies to governmental officials performing discretion-

ary functions.[3] If Woods' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," then he is entitled to avoid trial and the other burdens of litigation. *Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2737–38; *see also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

When this issue is presented on motion for summary judgment, the evidence presented by the parties must be "read in the light most favorable to the non-moving party." *Poe*, 853 F.2d at 425.

> If the undisputed facts show that defendant's conduct, as a matter of law, did not violate clearly established legal rights, then the district court must grant the defendant summary judgment on the basis of qualified immunity. Thus, for example, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to the truth of the allegations that the defendant in fact committed acts that violate clearly established law.

*Id.* (citations omitted).

▪ The right that plaintiff contends was violated by defendant Woods is the right to be free of discrimination on account of one's race with respect to the terms, conditions, or privileges of employment or because of opposition to such discrimination. Such racial discrimination was made illegal by virtue of Title VII of the Civil Rights Act of 1964, as amended in 1972 and in 1989. These statutory prohibitions constituted "clearly established rights" of which any reasonable public official would be well aware.[4]

Given those "clearly established rights," the question on this motion for summary judgment on the basis of defendant's qualified immunity is whether the defendant "violated" those clearly established rights. If the undisputed facts reflect that defendant did not violate such rights, he is entitled to summary judgment. At this stage, the issue is no different than a defendant's motion for summary judgment on the basis that, given a plaintiff's lack of evidence on an essential element of the plaintiff's claim, defendant would be entitled to summary judgment as a matter of law. It is plaintiff's burden to produce "proof that would be strong enough to allow [the factfinder] to return a verdict for [him] under appropriate instructions." *Crutcher*, 883 F.2d at 504.

Plaintiff has no direct evidence of intentional racial discrimination on the part of defendant Woods and must rely upon such inferences as can be drawn from defendant's conduct and the surrounding circumstances. Here, even assuming that the facts support a prima facie case of discrimination, which is not clear, defendant Woods, as he is required to do once a prima facie case is shown, has articulated on the record legitimate, non-discriminatory reasons for his conduct and thereby placed on plaintiff the burden of producing evidence which would permit a judgment for plaintiff on the basis that such articulations

---

**3.** There is no dispute but that Woods was acting within the scope of his discretionary authority.

**4.** Although plaintiff asserts rights under 42 U.S.C. § 1981, it is clear that claims of racial harassment in the conditions of employment are not cognizable under this statute. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The reasoning of that opinion also requires a finding that section 1981 does not apply to a claim that plaintiff's employment was terminated on account of race. Plaintiff's claims against Woods thus do not state a claim under section 1981 and no clearly established right has been violated in that regard.

Plaintiff also asserts a claim under 42 U.S.C. § 1983; however, as to local government employers, Title VII of the Civil Rights Act of 1964, as amended, is the exclusive remedy for the action therein prohibited and precludes a claim under section 1983 for such actions which are based on a violation of Title VII. *Day v. Wayne County,* 749 F.2d 1199 (6th Cir.1984). The plaintiff's claim of retaliation is thus limited to Title VII. To the extent that plaintiff asserts a claim for termination of his employment under section 1983 based solely on a constitutional violation, presumably on the fourteenth amendment, the claim is viable and involves a clearly established right. The essential elements of the claim are, however, the same as those under Title VII and no separate analysis is required for the purpose of deciding defendant's qualified immunity.

were pretextual and merely disguises of defendant's racial animus and retaliation.

■ Plaintiff has produced evidence that his discharge, and certainly its timing, was motivated, at least in part, by the plaintiff's threat to file an EEOC claim in the May 2, 1989 letter sent by his attorney. Such retaliation, if accepted by the factfinder as the determinative factor leading to the discharge, would be sufficient to support a finding that defendant Woods was motivated by retaliatory intent.[5] The motion for summary judgment must be denied on the issue of retaliation.

■ However, plaintiff has produced no evidence that defendant Woods' articulated non-discriminatory reasons for the discharge were pretextual or disguises of racial animus. Therefore, defendant Woods, in his individual capacity, is entitled to summary judgment on his defense of qualified immunity to the claim of racial discrimination.

## B. DWIGHT R. MONTGOMERY

Plaintiff charges that defendant Montgomery, Chairman of the Board of Commissioners at MHA, discriminated against him on the basis of his race when he failed to select plaintiff as executive director of MHA in violation of 42 U.S.C. §§ 1981 and 1983. These statutes pertinently provide:

> All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981 (1988).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988).

■ It is settled that 42 U.S.C. § 1981 applies to whites as well as minorities. *McDonald*, 427 U.S. at 287–88, 96 S.Ct. at 2582. Plaintiff has established that he had a clearly established legal right to be free from intentional racial discrimination in his efforts to seek the position of executive director at the time of Montgomery's challenged conduct. Additionally, the right to be free of such racial discrimination exists under Title VII.[6] As proof of Montgomery's motive in the selection decision, plaintiff asserts that Montgomery asked plaintiff not to speak to the press, voted for Woods over plaintiff to fill the position of executive director, and reprimanded plaintiff for contacting the Mayor during a tense strike situation.

In response, Montgomery testified in his deposition that he believed that plaintiff's statements to the press regarding the position of executive director were inappropriate because employees were not at liberty to speak to the press regarding matters at MHA. Rather, all information was funnelled through the public relations office, the executive director, or the deputy executive director. (Montgomery Depo., p. 60). Interestingly, at the time plaintiff made his statement to the press regarding the execu-

---

5. No conclusion is reached in this opinion concerning the extent of the protection offered by the retaliation clause of Title VII, nor whether the proof will suffice at trial for this issue to be presented to the jury.

6. A claim under section 1981 for racial discrimination in a promotion decision may be precluded by the statutory provisions of Title VII insofar as it relates to state and municipal employers; this question need not, however, be decided at this point. The essential elements of this claim would be the same under both statutes.

See *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (as to federal employees), and *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (as to private employees).

Plaintiff's claim under section 1983 for a violation of Title VII rights is precluded; Title VII provides the exclusive remedy for a violation of Title VII, but plaintiff's claim, to the extent based on the fourteenth amendment, is viable.

tive director's position, he was the deputy executive director at MHA. As to his choice of Woods as executive director, Montgomery avers that he believed that Woods, an attorney, could handle HUD documents, familiarize himself with rules and regulations, and handle the public. In addition, Montgomery stated that he approved of Woods' mannerisms and felt that he would be good for morale. Moreover, Montgomery added that he felt Woods would bring new direction to MHA. (Montgomery Depo., pp. 82–83). Further, Montgomery asserts that race was not a factor during the selection. (Montgomery Depo., pp. 84–85). Finally, as to his statement to plaintiff during the strike, Montgomery admitted that he did not feel that plaintiff had followed protocol in handling the strike situation and he informed plaintiff during a meeting that he disapproved of his action. (Montgomery Depo., p. 118). During this meeting, plaintiff disagreed with Montgomery regarding his handling of the strike situation. Montgomery interjected that plaintiff was not running MHA and informed plaintiff that MHA was 98% black and before he would let plaintiff destroy MHA, he would get every black friend he had to come to MHA. (Montgomery Depo., pp. 120–21).

In opposition to defendants' motion, plaintiff submits the affidavits of Alma Lovett and Charles Morris, Sr., and the testimony of Reverend William Adkins. Lovett avers that Montgomery told her that she had no right to support a white man for the position of executive director and that as long as he was associated with MHA, there would be no white director. Similarly, Mr. Morris avers that Montgomery told him so long as he (Montgomery) was chairman of the board of MHA, neither Rod Fauser, nor any other white man, would be in charge. Reverend Adkins testified in his deposition that Montgomery stated that "as long as he was there, that honky wouldn't be" executive director. Such comments undeniably exhibit racial animus. Under these circumstances, a genuine issue of material fact clearly exists as to whether Montgomery is entitled to qualified immunity. Direct evidence of de-

fendant Montgomery's racial animus in the rejection of plaintiff as the executive director has been presented and would be sufficient to support a judgment against Montgomery under sections 1981 and 1983, as well as under Title VII. Since there are factual disputes on the issue of whether plaintiff's clearly established rights were violated by Montgomery, summary judgment in his favor would be inappropriate. Defendant Montgomery's motion to dismiss and/or for summary judgment on the basis of qualified immunity is therefore denied.

## II. PUNITIVE DAMAGES

 Plaintiff seeks punitive damages under 42 U.S.C. §§ 1981 and 1983 against MHA and the individual defendants jointly and severally in their official capacities and in their individual capacities. This court has held that Woods may not be sued individually except on the claim of retaliation and no claim for retaliation lies under section 1983. Punitive damages are not recoverable under Title VII for retaliation. As noted by defendants and plaintiff, municipalities are immune from punitive damages under section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Municipalities are also immune from punitive damages under section 1981. *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir.1984); *Walters v. Atlanta*, 803 F.2d 1135 (11th Cir. 1986). However, punitive damages may be awarded in "appropriate circumstances against the offending official, based on his personal financial resources." *City of Newport*, 453 U.S. at 269, 101 S.Ct. at 2761.

 Accordingly, plaintiff may not recover punitive damages from defendant MHA, a governmental agency created under Tennessee law. Nor may plaintiff recover punitive damages against defendants Woods and Montgomery in their official capacities since an official capacity lawsuit imposes liability upon the municipality. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Plaintiff may, however, recover punitive damages from defendant Montgomery but only upon establishing that Montgomery

acted with "reckless or callous" indifference for plaintiff's rights or, alternatively, that Montgomery intentionally violated federal law. *Gutzwiller v. Fenik,* 860 F.2d 1317, 1329 (6th Cir.1988). Sufficient facts have been alleged from which a reasonable juror could find that defendant Montgomery's conduct was reckless or callous.

Summary judgment on the issue of punitive damages as to defendant Montgomery in his individual capacity is denied. As to all other defendants, the motion for summary judgment on the issue of punitive damages is granted.

## III. BACKPAY

Defendants move this court to find, as a matter of law, that plaintiff failed to exercise reasonable diligence in mitigating his damages, if any, when he failed to accept a position as executive director of the Fort Wayne Housing Authority in Indiana. Conversely, plaintiff asserts that he has diligently sought other employment since his termination. With regard to the Fort Wayne position, plaintiff avers that he rejected this offer because acceptance of the offer could have necessitated moving to an area with a higher cost of living at a salary which was substantially less than plaintiff's salary at MHA, and because plaintiff believed that he would be offered a position with the East St. Louis Housing Authority, at a higher salary. (Affidavit of Fauser).

In Title VII cases, awarding of backpay is governed by Section 706(g) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(g). *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 225, 102 S.Ct. 3057, 3062, 73 L.Ed.2d 721 (1982). Pursuant to this statute, the person allegedly discriminated against must exercise reasonable diligence in seeking and accepting new employment which is substantially similar to that from which he was discharged. *Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1273 (4th Cir.1985). The burden, however, is on the alleged discriminating employer to show (1) that there was a substantially equivalent position, and (2) that plaintiff failed to exercise reasonable care and diligence in seeking or maintaining such position. *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Once the employer meets this burden, the plaintiff must then submit evidence of reasonable care in seeking employment. *Wooldridge v. Marlene Industries Corp.,* 875 F.2d 540, 548 (6th Cir.1989).

Here, defendants assert that with the exception of a "mere" $10,643.64 difference in compensation, the Fort Wayne position had virtually identical promotional opportunities, job responsibilities, working conditions and status. Moreover, defendants assert that in light of the job market, it was not unreasonable for plaintiff to relocate to another area. Plaintiff does not dispute that the job was substantially similar, but argues that under the attendant circumstances, including the higher cost of living and anticipated alternative job offer, he exercised reasonable diligence in seeking other employment. A genuine issue of material fact exists as to whether plaintiff's refusal to accept the Fort Wayne offer was "so unreasonable as to constitute a failure to mitigate damages." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1158 (6th Cir.1985).

Defendants' motion for summary judgment on the issue of backpay is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on the issue of qualified immunity is granted as to defendant Woods, in his individual capacity except on the issue of retaliatory discharge, and denied as to defendant Montgomery. Summary judgment on the issue of punitive damages is granted to defendants MHA and Woods, and denied as to defendant Montgomery. Further, defendants' motion for summary judgment as to the issue of backpay is denied.

IT IS SO ORDERED.