**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0520n.06

**No. 11-3075**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***May 18, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| PAUL TOTH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| CITY OF TOLEDO; MICHAEL J. NAVARRE, in his | ) | |
| official capacity as Chief, Toledo Police Department; | ) | |
| ROBERT REINBOLT, in his official capacity as | ) | |
| Director, Department of Public Safety, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: BOGGS and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

GRIFFIN, Circuit Judge.

Paul Toth appeals the district court's entry of summary judgment on his claims of employment discrimination. We affirm.

I.

Paul Toth, a Caucasian male, has been a patrolman with the Toledo Police Department since 2000. Throughout his tenure, he has received several awards and commendations for his public service. Unfortunately, he has also been disciplined for some rather serious offenses.

---

[*]The Honorable Judith M. Barzilay, Senior Judge, United States Court of International Trade, sitting by designation.

In July 2007, Toth pleaded no contest to administrative charges of "Conduct Subservient" and "Willful Violation of any law of the State of Ohio or ordinance of the City of Toledo." The charges arose from a citizen complaint made by Darnell Gipson. Gipson was video recording the arrest of a suspect when Toth and another officer confronted and later arrested him. According to Gipson, Toth and the other officer used excessive force by applying pressure to the handcuffs for no reason. During an investigation into Gipson's allegations of excessive use of force and willful violation that arose from the incident, it was discovered that Toth had taped over Gipson's earlier recording of the arrest. Toth denied purposely destroying evidence of the incident, but evidence offered at a hearing on the charge showed otherwise. Although the charges for excessive use of force and willful violation were not sustained, Toth pleaded no contest to the charges stemming from erasure of the video recording. He agreed to a fifty-day suspension, with twenty-five of the days held in abeyance for two years.

In October 2007, Toth pleaded no contest to administrative charges of "Conduct Unbecoming an Officer." This charge arose out of a complaint filed by a fellow sergeant who alleged that Toth used excessive force and abused his authority during the arrest of a suspect following a traffic stop for loud music. Because this was Toth's second alleged major violation of Department rules in a period spanning less than four months, he was placed on restrictive duty, pending the outcome of the investigation. He was ordered to surrender his badge, police cap, weapon, and police identification card, and was prohibited from engaging in police-related outside employment. He was also assigned to the Investigative Services Division, where he performed tasks such as filing closed

cases and organizing files. Although originally charged with "Abuse of Authority," Toth pleaded no contest to "Conduct Unbecoming an Officer." He agreed to a thirty-day suspension, with fifteen of the days held in abeyance for two years. In addition, his employment was terminated, with the termination held in abeyance for three years.

In 2006, Toth sat for the written sergeant examination. He did well, receiving the eighth highest score among the forty-eight who took the test. The selection process for promotion to sergeant involves consideration of various factors, including the applicant's oral-interview score, written-exercise score, education, sick-time usage, previous performance evaluations, length of service, and disciplinary record. The decision-maker has discretion in evaluating and balancing these criteria. Police Chief Michael Navarre, the decision-maker here, testified that he never gave special consideration to minorities, females, or persons with disabilities, with respect to promotion to sergeant.

Twelve officers were promoted to sergeant between July 2006 and March 2008 – eleven were Caucasian and one was African-American. In June 2010, five more officers were promoted; three were Caucasian and two were African-American. Toth has not been promoted.

In June 2009, Toth sued the City of Toledo, Navarre, and Robert Reinbolt, Director of the Department of Public Safety for Toledo,[1] claiming that they discriminated against him on the basis

---

[1] Toth sued Navarre and Reinbolt only in their official capacities as agents of the City of Toledo, so the action is one only against the City of Toledo. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an

of his race when they disciplined him in 2007 and when they did not promote him to sergeant. He asserted causes of action under Ohio Rev. Code § 4112.99 and 42 U.S.C. § 1983. Defendants moved for summary judgment on all of Toth's claims at the close of discovery. A magistrate judge recommended granting defendants' motion. Over Toth's objections, the district court adopted the recommendation and entered summary judgment in defendants' favor.

Toth timely appealed.

## II.

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

## III.

Toth has not addressed the portion of the district court's decision entering summary judgment on his state-law claim. Accordingly, this claim is abandoned, and we do not address it. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 n.1 (6th Cir. 2011). The only claim before us is the one under § 1983.

---

entity of which an officer is an agent." (citation and internal quotation marks omitted)).

A.

Toth claims that defendants violated the Equal Protection Clause of the Fourteenth Amendment when they discriminated against him on the basis of race by disciplining him and later failing to promote him to sergeant. His claims are brought pursuant to 42 U.S.C. § 1983. Defendants contend that, because these claims are predicated upon employment discrimination, they are preempted by Title VII of the federal Civil Rights Act of 1964. They reference our statement in *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir. 1984), that Title VII "provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." *Id.* at 1204.

Defendants have misread *Day*. *Day* involved a unique situation, not present here, where the plaintiff sued under Title VII and § 1983 for conduct that only violated Title VII. The district court found that the plaintiff's employer demoted him in retaliation for filing complaints with the Equal Employment Opportunity Commission, a violation of Title VII's anti-retaliation provision, but not of the Constitution or another federal statute. It awarded injunctive relief that was permitted by Title VII, but denied the plaintiff's request under § 1983 for damages. On appeal, we affirmed the denial of damages sought under § 1983, holding that Title VII, which did not allow for the damages sought, afforded the sole remedy for a plaintiff who claims that the defendant violated only Title VII, and not the Constitution or another federal statute. We determined that it would be anomalous to hold that, where "*the only unlawful employment practice consists of the violation of a right created by*

- 5 -

*Title VII*, the plaintiff can by-pass all of the administrative processes of Title VII and go directly into

court under § 1983." *Id.* at 1204 (emphasis added). We also stated that the holding did not disturb

our earlier holding in *Grano v. Department of Development*, 637 F.2d 1073 (6th Cir. 1980), that "an

employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation

rests on a claim of infringement of rights guaranteed by the Constitution." *Day*, 749 F.2d at 1205;

*see Woodruff v. Ohman*, 29 F. App'x 337, 343 (6th Cir. 2002) ("As *Day* makes clear, Title VII

provides the exclusive remedy only with regard to those rights that are secured by Title VII *but are*

*not protected independently of Title VII by the Constitution.*" (emphasis added)).

Here, Toth's § 1983 claims are based not upon violations of Title VII – indeed, Title VII is

mentioned nowhere in his complaint – but instead upon violations of the Constitution's Equal

Protection Clause. *Day* does not foreclose Toth from asserting a claim under § 1983 for alleged

violations of these rights simply because he is not also asserting a claim under Title VII. *See, e.g.*,

*Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000); *see also Annis v. Cnty. of Westchester*, 36 F.3d

251, 255 (2d Cir. 1994) ("We . . . hold that an employment discrimination plaintiff alleging the

violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead

concurrently a violation of Title VII.").

B.

To succeed on his § 1983 claim, Toth must prove: (1) that he was deprived of a right secured

by the Constitution or federal laws; and (2) that the deprivation was committed by a person acting

under color of state law. 42 U.S.C. § 1983; *see Parratt v. Taylor*, 451 U.S. 527, 535 (1981)

(*overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). Only the first element is disputed here.[2] To repeat, Toth claims that he was deprived of his Fourteenth Amendment right to equal protection under the law when defendants disciplined him and later did not promote him to sergeant, both times because of his race.

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, "[i]n order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.'" *Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 1991) (citation omitted). The plaintiff must establish that the employment decision at issue would not have been made "but for" the plaintiff's race, *Weberg*, 229 F.3d at 522, which is to say he must prove that "discriminatory intent more likely than not was the basis of the adverse employment action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (citation and internal quotation marks omitted).

Toth has presented no direct evidence of discrimination, so he must prove it through circumstantial evidence. A helpful way of proving discrimination circumstantially is through the

---

[2]A municipality may be held liable as a "person" under § 1983 only for deprivations made pursuant to a policy, practice, custom, or procedure of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Defendants contend that Toth cannot demonstrate the existence of any policy or custom. We need only address the argument if we find sufficient evidence of a constitutional violation. *See Whitson v. Knox Cnty. Bd. of Educ.*, No. 10-6240, 2012 WL 913708, at *8 (6th Cir. Mar. 20, 2012) ("Without a deprivation, policy does not matter.").

burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We look to cases involving claims of disparate treatment under Title VII for guidance in the equal-protection analysis. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Weberg*, 229 F.3d at 522; *see also Gutzwiller*, 860 F.2d at 1325 (noting that "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983"). We address each of Toth's claims separately.

1.

To establish a prima facie case of reverse race discrimination with respect to an alleged adverse employment action such as discipline, the plaintiff must demonstrate: (1) background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) that the plaintiff was qualified for the job; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff was treated differently than similarly situated employees of a different race. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 837 (6th Cir. 2012). The only question here is whether Toth satisfies the first and fourth elements.

With respect to the first element, defendants contend that Toth has not demonstrated background circumstances suggesting defendants discriminate against the majority with respect to punishment. Such circumstances might exist where, for example, the defendant has a history of improperly considering race as a factor in employment-related decisions, where the employer's workforce is predominantly comprised of minorities, or where the person in charge of making

employment decisions is a minority. *See Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002); *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 722-23 (N.D. Ohio 2008).

Toth points to the fact that newspaper editorials in the Toledo community prior to his discipline opined that strained race relations caused riots in Toledo in 2005. The same editorials called for investigation and punishment of white officers who treated African-Americans harshly. Toth believes that the City eventually succumbed to pressure from the African-American community when it punished him so severely and began hiring more African-Americans. According to Toth, the current mayor is African-American, as are the Directors of the Office of Affirmative Action and the Office of Safety, and various members of the City's Board of Community Relations.

These facts are insufficient to create an inference of discrimination against the majority. Toth has provided no indication of the racial makeup of the City's employees, and no indication that any African-American employee was hired on account of his or her race. The simple existence of racial diversity on the City's payroll does not give rise to the inference that it discriminates against the majority. *Cf. Sutherland*, 344 F.3d at 615-16 (background circumstances are demonstrated where African-Americans held 11% of the relevant position, even though they represented only 5.2% of the qualified workforce in the state; persons in traditionally protected classes, such as racial minorities, females, and the disabled, represented 77% of all new hires; and those in a protected class held 71% of the relevant positions).

Toth also cannot show that he was punished more severely than similarly situated minority officers. A plaintiff is "not required to demonstrate an exact correlation between himself and others

similarly situated; rather, he [must] show only that he and his proposed comparators were similar in all relevant respects" and, in the disciplinary context, "that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (internal citation omitted). Toth offers four patrolmen and one sergeant, all African Americans, whom he believes were punished less severely than he was for what he contends was comparable conduct.

Eric Board received written reprimands, counseling, and brief suspensions held in abeyance for offenses such as "Late for Duty," "Failure to Keep Court Appearance," "Personal Appearance," "Lack of Energy," "Demeanor,""Recognition of Command," and"Absence without Leave." Toth has failed to show that these offenses are similar in severity to his offenses for "Conduct Unbecoming an Officer," "Conduct Subservient," and "Willful Violation of Any Law of the State of Ohio or Ordinance of the City of Toledo." Nor has Toth shown that the conduct giving rise to Board's offenses was as serious as Toth's willful destruction of evidence.

Officers Andre Bills and Byron Daniels were charged with "Excessive Use of Force" for an incident involving their arrest of a fourteen-year-old boy. But the charges were not sustained, so the officers were never punished. They are not appropriate comparators.

Officer Marlon Shockley was found guilty, after a hearing, of a charge of "Conduct Unbecoming an Officer" for fighting with another person while off duty. He was sentenced to

twenty days' suspension, with ten days held in abeyance for two years.[3]  While he was punished less severely than Toth, Shockley's conduct was of a different nature than Toth's, and there are legitimate reasons why Toth would be punished more severely.  One of Toth's charges arose from what was determined to be the willful destruction of evidence, a charge that, unlike fighting, could jeopardize Toth's ability to assist in future criminal prosecutions.  Moreover, all of Toth's conduct took place in the course of his official duty, while Shockley's took place while off duty.  Toth's conduct is thus more likely to result in the City being sued or criticized for the conduct of its employees, while Shockley's off-duty conduct does not legally implicate the City.  *Cf. Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710-11 (6th Cir. 2006).  Shockley and Toth are not similarly situated.

Toth lastly offers Sergeant Dan Brandon, who pleaded guilty to charges of "Conduct Unbecoming an Officer," "Abuse of Authority in Dealing with the Public," and "Conduct Subversive to the Good Order and Discipline of the Department."  Brandon threatened a store clerk with arrest unless she engaged in sexual conduct with him.  He also told the clerk that she should use drugs.  These were serious offenses, and they were met with a serious punishment:  the mayor personally terminated Brandon's employment and did not hold the termination in abeyance.  Although Brandon was later reinstated after he successfully arbitrated the decision, that fact is irrelevant here.  What is important is that *the City* did not punish Brandon less severely than Toth for offenses arguably of the same degree.

---

[3]His sentence was later reduced following an appeal to the Civil Service Commission.  We consider the initial discipline only, because Toth did not similarly appeal his conviction.

Toth cannot establish a prima facie case of race discrimination with respect to his discipline.

2.

To establish a prima facie case of reverse race discrimination in the context of a failure to promote, the plaintiff must prove: (1) background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) that the plaintiff applied for, and was qualified for, a promotion; (3) that the plaintiff was considered for, and denied, the promotion; and (4) other employees of similar qualifications who were not members of the majority were promoted. *Sutherland*, 344 F.3d at 614.

Toth cannot establish background circumstances demonstrating discrimination against the majority with respect to promotions. Again, there is no evidence regarding the racial makeup of the workforce and how it compares to the racial composition of the community from which it hires. Additionally, during the time that Toth was first passed over for a promotion, twelve of the thirteen officers promoted were Caucasian, as were three of the five officers later promoted in June 2010. Furthermore, the decision-maker with respect to promotions at the time, Police Chief Michael Navarre, is Caucasian. *Cf. Zambetti*, 314 F.3d at 257 ("[T]he person in charge of hiring for CCC, Chief Harris, was himself African-American. This is sufficient, in our opinion, to satisfy [the] 'background circumstances' requirement.").

Toth also cannot demonstrate that he had qualifications similar to a minority patrolman, let alone a patrolman of *any* race, who was promoted to sergeant. One of the key factors Navarre considers with respect to promotion is the candidate's disciplinary record. He has never once

promoted to sergeant a patrolman who was disciplined for a major offense within five years of consideration. In this case, Toth had *three* violations arising out of two separate incidents within a span of four months. Toth has not identified any patrolman who was promoted to sergeant despite a comparable disciplinary history.[4]

Toth cannot establish a prima facie case of discriminatory failure to promote.

IV.

For these reasons, we affirm the judgment of the district court.

---

[4]In his reply brief, Toth suggests that Anita Madison was promoted despite a more egregious disciplinary history. The argument is waived and lacks merit regardless. Even assuming comparable offenses and disciplines between the two officers, Madison's offense occurred *over seven years* before she was promoted, and the collective bargaining agreement in place provides that major offenses are removed from an officer's record after five years. Toth, on the other hand, was still within the probationary period of his punishment when he was considered for promotion.