SEYMOUR, Chief Judge,
concurring.
The district court here devoted careful consideration to a difficult and bitterly disputed lawsuit. Although I am in agreement with the majority opinion as far as it goes, two of the issues raised on appeal indicate that our case law has not provided adequate guidance on important and recurring problems. Accordingly, I write separately to address two points that in my view require further analysis.
With regard to Sprint’s Batson claim, defense counsel supported her strike of the only black juror on the panel for five reasons, two of which were the juror’s comments that he had suffered racial discrimination in the workplace,[1] and that he believed in affirmative action.[2] Although the record leaves me in some doubt, for purposes of this discussion I agree with the majority that the district court may have addressed these reasons at stage two of the Batson inquiry and decided that they were not race-neutral, rather than finding them pretextual at stage three. I also agree that these reasons cannot be rejected at stage two merely on the basis of their disparate impact on minorities. Because this is a sensitive area, I believe a thorough analysis is appropriate.
Suffering racial discrimination and believing in affirmative action are reasons closely linked to race, and a peremptory strike on those grounds arguably could be viewed as resting on forbidden racial stereotypes or on the impermissible assumption that a black juror will identify with a black litigant simply on the basis of experiences they share due to their race. The Supreme Court has made clear that a ju *860 ror may not be challenged merely on counsel’s assumption-or his intuitive judgment-that a juror would be partial to a party because of their shared race. Batson v. Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Racial discrimination in the selection of jurors affects the integrity of the judicial process, see Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), undermines public confidence in the courts as impartial fora for the resolution of disputes, particularly in the sensitive area of race relations, see McCollum, 505 U.S. at 49, 112 S.Ct. 2348, and causes “profound personal humiliation heightened by its public character,” Powers, 499 U.S. at 413-14, 111 S.Ct. 1364. Because this issue is so important and so sensitive, a court must do more than merely state, as self-evident, that these two reasons are race-neutral when in fact they are so closely tied to race. The majority’s summary treatment of the matter does not respond to the district court’s concern that striking every black juror who reveals that he agrees with affirmative action or has been the victim of discrimination will almost always result in an all-white jury. I am also concerned that the majority gives an incomplete picture to litigants and others reading the opinion for guidance in this difficult area of the law.
The Supreme Court dealt with this issue at length in Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Although the majority cites Hernandez in passing, that case is particularly relevant and a more extensive discussion of that holding and its impact on the issue here is appropriate. Hernandez addressed peremptory challenges to bilingual Latino jurors that were justified on the ground that those jurors might not defer to the official translation of testimony originally given in Spanish. The party opposing the strike argued that because the ability to speak Spanish bears a close relation to ethnicity, it violated Batson to exercise a peremptory challenge on the ground that a Latino speaks Spanish, particularly given the high correlation between speaking Spanish and ethnicity in New York. See id. at 360, 111 S.Ct. 1859 (plurality opinion). The Court stated that it need not address that narrow argument because the challenge was not based on language ability alone. The Court pointed out that the challenge “rested neither on the intention to exclude Latino or bilingual jurors, nor on stereotypical assumptions about Latinos or bilinguals,” id. at 361, 111 S.Ct. 1859, but on the concern that Spanish speakers might have difficulty accepting the translator’s rendition of the testimony.
The Court nonetheless recognized that the basis for the challenge might well result in the disproportionate removal of prospective Latino jurors. Although it held that “disproportionate impact does not turn the prosecution’s actions into a per se violation of the Equal Protection Clause,” id., it also recognized that “disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent,” id. at 362, 111 S.Ct. 1859. The Court went on to state:
While the disproportionate impact on Latinos resulting from the prosecutor’s criterion for excluding these jurors does not answer the race-neutrality inquiry, it does have relevance to the trial court’s decision on this question. “[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [classification] bears more heavily on one race than another.” If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor’s stated reason constitutes a pretext for racial discrimination.
Id. at 363, 111 S.Ct. 1859 (emphasis added) (quoting Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Under Hernandez and the cases *861 upon which it relies, therefore, while disparate impact does not result in a per se equal protection violation, it is highly relevant to the issue of pretext. Hernandez thus presents a balanced view of the relevance of disparate impact, guidance on its place in the Batson inquiry, and responds to the trial court’s concerns here.
The second issue I believe merits additional analysis is the trial court’s dismissal of Ms. Heno’s claim under 42 U.S.C. § 1981 on the ground that the claim had no independent basis other than Title VII. Although I agree with the majority’s conclusion that the trial court erred in so doing, the error indicates that our case law needs clarification beyond that provided by the majority.
As an initial matter, it is important to explain what our cases mean when they hold that a claim under section 1981 or 1988 cannot go forward together with a Title VII claim unless those claims have a basis independent from the Title VII claim. The independent basis required is not an independent factual basis but an independent legal basis. If the claim made under section 1981 or 1983 is based on a legal right created by Title VII, such as retaliation, rather than a right created by a constitutional provision or another federal statute, the claim does not have an independent legal basis. If, on the other hand, the section 1981 or 1983 claim has an independent legal basis, such as the Equal Protection Clause, both claims may proceed even if they are based on the same facts.
In Drake v. City of Fort Collins, 927 F.2d 1156 (10th Cir.1991), the plaintiff brought race discrimination claims under Title VII, and sections 1981 and 1983. The district court dismissed the latter claims on the ground that Title VII provided the exclusive remedy. This court reversed, holding that the section 1981 and 1983 claims had a separate legal basis not created by Title VII. See 927 F.2d at 1162. We said in relevant part:
But a plaintiff must have an independent basis for claims outside of Title VII, “lest Congress’ prescribed remedies under Title VII be undermined.”
Plaintiff, in his original complaint, alleges that his due process and equal protection rights were violated, and requests remedies for those alleged violations under §§ 1981 and 1983. Therefore, he has alleged an independent basis for those claims. To the extent his factual allegations state a claim under these statutes, the district court erred in dismissing them.
Id. We pointed out that while disparate treatment claims may be brought under both Title VII and sections 1981 or 1983, disparate impact claims are a creature of Title VII and may not be brought under section 1981 or 1983 since those statutes require purposeful discrimination. We then held the district court’s erroneous dismissal of the section 1981 and 1983 claims harmless because we had already analyzed the facts in our discussion of Title VII and concluded that plaintiff had failed to put forth evidence to survive a summary judgment motion on discriminatory intent. This reading of Drake is made clear by the cases it cites. See Starrett v. Wadley, 876 F.2d 808, 813-14 (10th Cir.1989); New Mexico ex rel. Candelaria v. City of Albuquerque, 768 F.2d 1207, 1209 (10th Cir.1985).
In Notari v. Denver Water Dep’t, 971 F.2d 585 (10th Cir.1992), we elaborated on the holding in Drake, stating that when a claim under section 1981 or 1983 has a basis independent of and not created by Title VII, claims under both statutes may properly be brought. See id. at 587. The basis for a claim under section 1981 or 1983 is independent when it rests on a constitutional right or a federal statutory right other than those created by Title VII. Id. We pointed out that a race claim brought under section 1983 is based on the Equal Protection Clause of the Fourteenth Amendment and is therefore independent of Title VII even if the claims arise from *862 the same factual allegations and even if the same conduct violates both statutes. Id.
Section 1981 is based on Congress’ power under section 2 of the Thirteenth Amendment to determine the badges and incidents of slavery and translate that determination into effective legislation. Runyon v. McCrary, 427 U.S. 160, 170, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Accordingly, its basis is found in the Constitution and not in rights created by Title VII. Indeed, Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459-61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), specifically held that a plaintiff may sue under both sections. The Court stated that “the remedies under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent.” Id. at 461, 95 S.Ct. 1716 (emphasis added). Although Tafoya v. Adams, 612 F.Supp. 1097 (D.Colo.1985), relied on by the district court here, holds to the contrary, it has been soundly criticized and conflicts with the circuit authority discussed ' above. Moreover, in affirming Tafoya on appeal we specifically stated that we wei^e deciding the appeal on the narrower ground that the plaintiff had only alleged retaliatory discharge in his complaint, a right that was created by Title VII. The court therefore did not reach the “broader pronouncement” of the district court. Tafoya v. Adams, 816 F.2d 555, 556-57 (10th Cir.1987).
Accordingly, I join in the majority’s resolution of the Batson claim and the dismissal of the section 1981 claim, as well as the remainder of the opinion.

. He was a theatrical designer who worked for a local dance company that often toured out of the state and out of the country. He was in charge during these tours and stated that he was often not recognized as being in charge due to the fact that he was black.

. Defense counsel placed great reliance on the black juror's statement that he supported affirmative action. A review of the record reveals that this juror in fact stated “I felt [affirmative action] was very necessary when it was instituted, and I still believe it is necessary, but it has gotten in the way a little bit. Quotas, I think, have damaged the intent of the law.” App., vol. II, at 489. Significantly, white jurors kept on the panel gave similar responses.